# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

MELVIN J. FLOWERS,　　　　　　　 )
　　　　　　　　　　　　　　　　　　 )
　　　　　　Petitioner/Appellant,　　 )　Davidson Chancery No. 95-3632-I
　　　　　　　　　　　　　　　　　　 )
VS.　　　　　　　　　　　　　　　　 )　Appeal No. 01A01-9609-CH-00392
　　　　　　　　　　　　　　　　　　 )
CHARLES TRAUGHBER, et al,　　　　 )
　　　　　　　　　　　　　　　　　　 )
　　　　　　Respondents/Appellees.　 )

APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE
THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

FILED

March 27, 1997

Cecil W. Crowson
Appellate Court Clerk

**MELVIN J. FLOWERS, pro se**
Nashville, Tennessee

**CHARLES W. BURSON**
**Attorney General & Reporter**
**PATRICIA C. KUSSMANN**
**Assistant Attorney General**
Nashville, Tennessee
Attorneys for Appellees

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

In this action, Melvin Flowers ("Flowers") filed a petition for writ of certiorari or, alternatively, a writ of habeas corpus in the chancery court seeking judicial review of the Parole Board's ("Board") decision to postpone his parole eligibility hearing until he received an updated psychological evaluation. The chancery court denied Flowers' petition for writ of certiorari and held that the Board did not act arbitrarily, capriciously or in excess of its jurisdiction in making its decision to delay Flowers' parole eligibility hearing. Flowers has appealed the judgment of the chancery court, arguing that his constitutional rights were violated by the Board's decision to defer his parole hearing. For the reasons stated hereafter, we affirm the judgment of the chancery court.

**FACTS**

In 1971, Flowers was charged with the murder of his first wife in Alabama. An Alabama Grand Jury returned a no true bill and did not indict Flowers for this offense. In 1988, Flowers was charged with the murder of his second wife in Tennessee. On September 25, 1989, Flowers was convicted of second degree murder for the murder of his second wife and sentenced to twelve years in prison.

When Flowers first became eligible for parole in September 1991, Assistant District Attorney Edward Wilson, wrote a letter to the Board protesting the early release of Flowers on parole. Mr. Wilson's letter states in part as follows:

> Mr. Flowers was convicted for the offense of second degree murder out of the Criminal Court for Sullivan County on September 25, 1989. The victim in this case was his wife. Mr. Flowers' first wife died from gunshot wounds under mysterious circumstances several years prior to the present incident for which he is serving a sentence.
> At the time of the murder of his second wife, he and his wife were talking to their Catholic Priest on the phone, and the priest heard what he described as being gunshot(s) over the phone, and the phone was hung up. The investigation also revealed that at the time of the murdering of his wife the couple's small child was present in the home.
> Due to the mysterious circumstances involved at the death of Mr. Flowers' first wife

2

and taking into consideration the events and facts of the murder of his second wife, the State feels that a confinement period of approximately two years is much too lenient when you consider the value of human life. Therefore, the District Attorney is strongly opposed to the granting of any early release to Mr. Flowers.

Flowers was denied parole in September 1991 and in November 1993 due to the seriousness of his offense, his high risk to society and his need to participate in a mental health program. Flowers was scheduled to come before the Board again in November 1995, yet the Board notified Flowers on October 5, 1995 that his parole hearing would be continued so that Flowers could first undergo a psychological examination.

Due to the Board's continuance of his parole hearing, Flowers filed a petition for writ of certiorari or, alternatively, for a writ of habeas corpus in the chancery court on November 17, 1995. In his petition, Flowers argued that his due process and equal protection rights had been violated by the Board's decision to postpone his parole hearing and by the Board's alleged reliance upon the aforementioned letter from the district attorney's office in determining Flower's parole eligibility. Flowers contends that the Board relied upon false assertions contained in the letter in making their decision postpone his parole hearing.[1] Flowers also argued that the delay of his parole eligibility hearing constitutes cruel and unusual punishment.

Flowers filed a motion for a preliminary injunction and for a permanent or temporary restraining order seeking an order from the chancery court directing the Board and the Department of Correction to eliminate all information in their files implicating Flowers for the murder of his first wife and directing the Board to schedule a parole hearing for him. Flowers then filed a "motion for order to be brought to court" wherein he sought a court order requiring his presence during the hearing on his motion for injunctive relief.

---

[1]Flowers asserts that because an Alabama grand jury returned a no true bill regarding the charges brought against him for the murder of his first wife, all information implicating him for the death of his first wife should be expunged from his records with the Board.

Flowers thereafter filed a petition for writ of supersedeas and again petitioned the court for an order directing the Board to expunge from their records all information implicating Flowers for the murder of his first wife and for an order directing the Board to schedule a parole hearing for him.

The Respondents filed a motion to dismiss Flowers' petition for failure to state a claim upon which relief can be granted.[2] In response, Flowers filed a "motion to grant writ of certiorari and deny respondent motion to dismiss" and a "motion to be brought to court" wherein he sought a court order requiring his presence during the hearing on the Respondents' motion to dismiss.

The chancery court denied Flowers' request for a temporary restraining order or preliminary injunction holding that Flowers failed to show that he would suffer irreparable harm prior to a decision on the merits of his case. The chancery court also denied Flowers' petition for a writ of supersedeas holding that a writ of supersedeas was an inappropriate remedy for the type of relief that Flowers requested. The chancery court thereafter granted the Respondents' motion to dismiss and held that the Board did not act arbitrarily, capriciously or in excess of its jurisdiction when it postponed Flowers' parole eligibility hearing until he received an updated psychological evaluation.

After the Board once again denied Flowers release on parole on February 6, 1996, Flowers filed a "motion to reconsider dismissal of his writ of certiorari due to a supplemental issue" and argued that the Board's decision to deny him parole violated his equal protection and due process rights under the constitution. The chancery court denied Flowers' motion for reconsideration.

Flowers thereafter filed a petition for "writ of certiorari on supplemental issues," seeking review of the Board's decision to decline to release him on parole. Flowers next filed a motion for summary judgment, seeking a court order directing the Board to release

---

[2]Flowers named members of the Board of Paroles and the warden of the Nashville Community Service Center as Defendants. They are also described in the pleadings as Respondents.

4

him on parole. Flowers then filed a second motion for a preliminary injunction and temporary restraining order and again sought an order from the chancery court directing the Board to release him on parole.

After filing the foregoing motions, Flowers filed a motion for appointment of counsel and requested that the court appoint an attorney to represent him during the hearings on these motions. Flowers subsequently filed a motion requesting the court to order discovery.

Because the chancery court had previously dismissed Flowers' action and had previously denied Flowers' motion to reconsider, the chancery court denied Flowers' motion for a preliminary injunction and temporary restraining order, motion to compel discovery and motion for summary judgment and held that Flowers' no longer had an action pending before the court.

Flowers appealed the judgment of the chancery court and filed a notice designating his issues on appeal. The Respondents then objected to two of the issues that Flowers designated on appeal: class certification and prison overcrowding. The chancery court thereupon issued an order denying Flowers request to supplement the record to include these two additional issues that were not properly raised in the chancery court.

**LAW**

The issues before this Court are as follows:

1) Whether the chancery court erred in holding that the Board's decision to postpone Flowers' parole eligibility hearing until he received an updated psychological examination did not deny Flowers his constitutional right to due process;

2) Whether the chancery court erred in holding that the Board's decision to postpone Flowers' parole eligibility hearing until he received an updated psychological examination did not deny Flowers his constitutional right to equal protection;

3) Whether the chancery court erred in holding that the Board's application of

amended Board policy rules, which became effective over two years after Flowers' conviction, did not violate the prohibitions under the *Ex Post Facto* Clause;

4) Whether the chancery court erred in denying Flowers' motion to expunge from his record with the Board all information implicating him for the death of his first wife?

5) Whether the chancery court erred in denying Flowers' motion for appointment of counsel;

6) Whether the chancery court erred in denying Flowers the opportunity to be present in court;

7) Whether the chancery court erred in denying Flowers' request to supplement the record to include two additional issues not properly raised in the chancery court; and

8) Whether the chancery court erred in dismissing Flowers' petition for writ of certiorari holding that the Board did not act arbitrarily, capriciously or in excess of its jurisdiction in making its decision to delay Flowers' parole eligibility hearing.

The scope of review under a common law writ of certiorari is very narrow. Powell v. Parole Eligibility Review Bd., 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994). It covers only an inquiry into whether the Board has exceeded its jurisdiction or is acting illegally, fraudulently or arbitrarily. Foster v. First National Bank, 430 S.W.2d 450, 451 (Tenn. 1968); Hoover Motor Exp. Co., Inc. v. Railroad. & Pub. Util. Comm'n, 261 S.W.2d 233, 238 (Tenn. 1953); Fite v. State, 925 S.W.2d 543, 544 (Tenn. Ct. App. 1996); Powell, 879 S.W.2d at 873; Yokley v. State, 632 S.W.2d 123, 126 (Tenn. Ct. App. 1981). It is not the correctness of the decision that is subject to judicial review; rather, it is the manner in which the decision is reached. State ex rel McMorrough v. Hunt, 192 S.W. 931 (Tenn. 1917); Powell, 879 S.W.2d at 873; Yokley, 632 S.W.2d at 126. If the Board reached its decision in a constitutional or lawful manner, then the decision will not be subject to judicial review. Id.

Flowers argues that he was denied due process by the Board's decision to postpone his parole eligibility hearing until he received an updated psychological examination. In determining whether a due process violation has occurred, the existence of a protected

6

right must be the threshold determination. Howard v. Grinage, 82 F.3d 1343, 1349-50 (6th Cir. 1996). In the absence of a protected right, a plaintiff fails to state a due process claim. Id.

> T. C A. § 40-35-503(b)(1996 Supp.) provides as follows:
>
> (b) **Release on parole is a privilege and not a right**, and no inmate convicted shall be granted parole if the board finds that:
> (1) There is a substantial risk that the defendant will not conform to the conditions of the release program;
> (2) The release from custody at the time would depreciate the seriousness of the crime of which the defendant stands convicted or promote disrespect for the law;
> (3) The release from custody at the time would have a substantially adverse effect on institutional discipline; or
> (4) The defendant's continued correctional treatment, medical care or vocational or other training in the institution will substantially enhance the defendant's capacity to lead a law-abiding life when given release status at a later time.

The legislative grant of probation is therefore a privilege and cannot be demanded as a right. State v. Correll, 626 S.W.2d 699, 701 (Tenn. 1982); Hooper v. State, 297 S.W.2d 78, 81 (Tenn. 1956); Kaylor v. Bradley, 912 S.W.2d 728, 733 (Tenn. Ct. App. 1995) .

The Supreme Court in Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7(1979), stated that there is no inherent right of a convicted individual to be conditionally released before the expiration of a valid sentence. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty." Id., quoting Meachum v. Fano, 427 U.S. 215, 224 (1976). Furthermore, there is no constitutional guarantee that the administrative decisions of a parole board will result in error-free determinations. Greenholtz, 442 U.S. at 7.

Similarly, our Court has recently stated that the "mere possibility of parole is not a constitutionally protected liberty interest." Kaylor, 912 S.W.2d at 732, citing Greenholtz, 442 U.S. at 7; See also, Wright v. Trammell, 810 F.2d 589, 591 (6th Cir. 1987) (holding that under the rules of the Tennessee Board of Parole, inmates do not have a constitutionally protected liberty interest in the expectancy of release upon parole and due process is not required in connection with the Parole Board's determination of whether to

7

grant parole to an inmate). Therefore, because Flowers does not have a statutory or constitutionally protected right to release on parole before the expiration of his twelve year sentence, Flowers' due process rights were not violated by the Board's decision to delay Flowers' parole hearing until he received an updated psychological examination.

Flowers also claims that his equal protection rights were violated by the Board's decision to delay his parole eligibility hearing until he received an updated psychological evaluation. The concept of equal protection espoused by the federal and state constitutions guarantees that all persons similarly situated shall be treated alike. State v. Tester, 879 S.W.2d 823, 828 (Tenn. 1994); Tennessee Small School Systems v. McWherter, 851 S.W.2d 139, 153 (Tenn. 1993). Equal protection analysis requires strict scrutiny of a legislative classification when the classification interferes with the exercise of a "fundamental right" (e.g., right to marry, right to vote or right of privacy) or when the classification operates to the peculiar disadvantage of a "suspect class" (e.g., alienage or race). State v. Tester, 879 S.W.2d at 828; Harrison v. Schrader, 569 S.W.2d 822, 825 (Tenn. 1978); San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 16(1973); Baker v. Carr, 369 U.S. 186 (1962) (right to vote); Griswold v. Connecticut, 381 U.S. 479 (1965) (right to privacy); Shapiro v. Thompson, 394 U.S. 618 (1969) (right to interstate travel). The right to parole, however, is not a fundamental right. Although the right to personal liberty is fundamental, that right is not implicated after a person is convicted of a crime and the only issue is the manner of service of the sentence imposed. Tester, 879 S.W.2d at 828; See also, State ex rel. Stewart v. McWherter, 857 S.W.2d 875, 877 (Tenn. Crim. App. 1992). Furthermore, the Tennessee Supreme Court has previously held that the right to probation is a privilege and not a right. Tester, 879 S.W.2d at 828; State v. Correll, 626 S.W.2d 699, 701 (Tenn. 1982); See also, Hooper v. State, 297 S.W.2d 78, 81 (Tenn. 1956).

Where the right infringed upon is not a fundamental right, a reduced level of scrutiny applies. Tester, 879 S.W.2d at 828-30. Accordingly, we will apply the rational basis test in analyzing Flowers' equal protection challenge. Under this standard, an equal protection

challenge must fail if some reasonable basis can be found for the classification, or if any state of facts may reasonably be conceived to justify the classification. Tester, 879 S.W.2d at 828; Tennessee Small School Systems v. McWherter, 851 S.W.2d at 153; Harrison v. Schrader, 569 S.W.2d at 825.

Our legislature has given the Board the discretion in determining when and under what conditions prisoners serving felony sentences of more than two years may be released on parole. See T.C.A. § 40-28-118(a)(1990); T.C.A. § 40-35-504(a)(1990). See also, T.C.A. § 40-22-109(1990). Because it is reasonable for our legislature to clothe the Board with the authority to determine which prisoners serving valid sentences will be released on parole, we conclude that Flowers' equal protection challenge is without merit.

Flowers next asserts that the Board breached the prohibitions under the *Ex Post Facto* Clause by applying Board policy rules, which became effective over two years after Flowers' conviction, to determine the scheduling of Flowers' parole eligibility hearings. Flowers contends that because the Board could decrease the frequency of his parole eligibility hearings under the more recent Board policy rules, his rights under the *Ex Post Facto* Clause have been violated.

Both the state and federal constitutions contain prohibitions against *ex post facto* laws. U.S. Const. Art. I, § 10, cl. 1; Tenn. Const. Art. I, § 11. The United States Supreme Court and the Tennessee Supreme Court have adopted complementary constructions of these provisions. Kaylor, 912 S.W.2d at 731. The United States Supreme Court has recently stated that the *Ex Post Facto* Clause is "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" Id., quoting California Dep't of Corrections v. Morales, 115 S.Ct. 1597, 1601 (1995). The Tennessee Supreme has likewise stated that the critical question in an *ex post facto* analysis is "whether the law changes the punishment to the defendant's disadvantage, or inflicts a greater punishment than the law allowed when the offense occurred." State v. Pearson, 858 S.W.2d 879, 883 (Tenn. 1993).

9

Both the federal and state precedents establish that two elements must be present in order for a criminal or penal law to run afoul of the *Ex Post Facto* Clause. First, the law must apply retrospectively to events occurring before its enactment. Kaylor, 912 S.W.2d at 732; Weaver v. Graham, 450 U.S. 24, 28 (1980); Lindsey v. Washington, 301 U.S. 397, 401 (1937). Second, the law must disadvantage the offender affected by it. Id. The courts, however, have resisted devising a bright line test for analyzing *ex post facto* claims. Morales, 115 S.Ct. at 1603. Determinations of these claims are based on a case-by-case basis. Kaylor, 912 S.W.2d at 732. The outcome depends on the significance of the right involved and the significance of the impairment. Id.

In Dobbert v. Florida, 432 U.S. 282, 293 (1977), the Supreme Court held that the prohibition of *ex post facto* laws does not extend to every change of law that "may work to the disadvantage of a defendant." Instead, it is intended to secure "substantive personal rights" from retroactive deprivation and does not "limit the legislative control of remedies and modes of procedure which do not affect matters of substance." Id.

The Court in Portley v. Grossman, 444 U.S. 1311 (1980), was faced with an issue similar to the one in the present case. In Portley, the appellant contended that the parole commission violated the constitutional prohibition against *ex post facto* laws by utilizing administrative guidelines, which had changed from those in effect at the time the appellant was sentenced, in determining the appellant's eligibility for parole. 444 U.S. at 1312. In holding that the parole commission did not violate the prohibition against *ex post facto* laws, the Court stated as follows:

> [t]he guidelines operate only to provide a framework for the Commission's exercise of its statutory discretion. The terms of the sentence originally imposed have in no way been altered. . . . The guidelines, therefore, neither deprive applicant of any pre-existing right nor enhance the punishment imposed. The change in guidelines assisting the Commission in the exercise of its discretion is in the nature of a procedural change found permissible in *Dobbert, supra.*

Portley v. Grossman, 444 U.S. at 1312-1313.

In addition, the Supreme Court has recently addressed this same issue in California

Dep't of Corrections v. Morales, 115 S.Ct. 1597 (1995).  In 1981, the State of California amended its parole procedures to allow the Board of Prison Terms to decrease the frequency of parole suitability hearings under certain circumstances.  In Morales, the Court was faced with the question of whether the application of this amendment to prisoners who committed their crimes before it was enacted violated the *Ex Post Facto* Clause.  115 S.Ct at 1599.  In holding that the amendment's application to prisoners who committed their crimes before it was enacted did not violate the *Ex Post Facto* Clause, the Court stated as follows:

> [t]he amendment did not increase the "punishment" attached to respondent's crime.  It left untouched his indeterminate sentence and the substantive formula for securing any reductions to the sentencing range.  By introducing the possibility that the board would not have to hold another parole hearing in the year or two after the initial hearing, the amendment simply alters the method to be followed in fixing a parole release date under identical substantive standards.
> . . . .
> Under respondent's expansive view, the Clause would forbid any legislative change that has any conceivable risk of affecting a prisoner's punishment.
> . . . .
> Respondent's approach would require that we invalidate any of a number of minor (and perhaps inevitable) mechanical changes that might produce some remote risk of impact on a prisoner's expected term of confinement.  Under respondent's approach, the judiciary would be charged with the micromanagement of an endless array of legislative adjustments to parole and sentencing procedures, including such innocuous adjustments as changes to the membership of the Board of Prison Terms, restrictions on the hours that prisoners may use the prison law library, reductions in the duration of the parole hearing, restrictions on the time allotted for a convicted defendant's right of allocution before a sentencing judge, and page limitations on a defendant's objections to presentence reports or on documents seeking a pardon from the governor.  These and countless other changes might create some speculative, attenuated risk of affecting a prisoner's actual term of confinement by making it more difficult for him to make a persuasive case for early release, but that fact alone cannot end the matter for *ex post facto* purposes.

Morales, 115 S.Ct. at 1598-1599, 1602-1603.


Because application of the amended Board policy rules to determine the scheduling of Flowers' parole eligibility hearings creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of Flowers'

punishment, we conclude that the Board's use of the amended policy rules to determine the scheduling of Flowers' parole hearings does not violate the prohibitions under the *Ex Post Facto* Clause.

Flowers further contends that the chancery court erred in not ordering the Board to expunge from their records all information implicating Flowers for the murder of his first wife. Because Flowers was formally charged with the crime of killing his first wife but was not indicted for this offense, Flowers argues that such information should be eliminated from the Board's files. In support of his argument, Flowers relies upon T.C.A. § 40-32-101(1996 Supp.). Although T.C.A. § 40-32-101 provides for the destruction of all "public records" of a person who was charged with a crime but whose charges were later dismissed, it specifically excludes from the definition of public records the following:

> arrest histories, investigative reports, intelligence information of law enforcement agencies, or files of district attorneys general that are maintained as confidential records for law enforcement purposes and are not open for inspection by members of the public.

T.C.A. § 40-32-101(b)(1996 Supp.).

The statute, therefore, expressly permits law enforcement agencies to maintain information in their files regarding individuals who have been charged with specific crimes. Thus, the chancery court did not err in denying Flowers' request to order the Board to expunge from their records all information implicating Flowers for the murder of his first wife.

Next, Flowers argues that the chancery court erred in not appointing an attorney to represent him. The Unites States Supreme Court in Douglas v. People of State of California, 372 U.S. 353 (1963), held that the Fourteenth Amendment guarantees the right to counsel to an indigent defendant through the first appeal as of right. Once the process goes beyond the trial and the direct appeal as of right stage, the state has no duty to provide an attorney for the indigent defendant. Ross v. Moffitt, 417 U.S. 600, 616 (1974); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Dankert v. Wharton, 733 F.2d 1537,

12

1538 (11th Cir. 1984). Accordingly, the federal constitution does not require that the states provide an attorney to an indigent post-conviction petitioner, even in capital cases. Murray v. Giarratano, 492 U.S. 1 (1989); Pennsylvania v. Finley, 481 U.S. at 554-555; Ross v. Moffitt, 417 U.S. at 616; See also Coleman v. Thompson, 501 U.S. 722, 752 (1991). Furthermore, it is a well-settled in Tennessee that the scope of the right to counsel is limited and applies only through the first appeal as of right. House v. State, 911 S.W.2d 705 (Tenn. 1995). It does not apply to post-conviction proceedings. Id; Davis v. State, 912 S.W.2d 689, 696 (Tenn. 1995); State v. Oates, 698 S.W.2d 79, 80-81 (Tenn. Cr. App. 1985); State v. Wilson, 667 S.W.2d 113, 114 (Tenn. Cr. App. 1983).

Because there is no right to counsel under either the federal or the state constitution beyond a criminal defendant's first appeal as of right, the chancery court did not err in failing to appoint an attorney for Flowers in his post-conviction action in chancery court.

Flowers further contends that the chancery court erred in denying his motion to be present in court during the hearing of his case. We note, however, that an individual's Sixth Amendment right to be present at all stages of the trial does not extend to post-conviction proceedings. Turner v. State, 580 S.W.2d 797, 799 (Tenn. Crim App. 1979). A post-conviction proceeding is not a trial nor an extension of it; rather, a post-conviction action is a wholly collateral lawsuit. Id. Flowers presence, therefore, would have made no difference to the outcome of this action. Thus, the chancery court did not err in denying Flowers' motion to be present in court during the hearing of his case.

Flowers also argues that the chancery court erred in denying Flowers' request to supplement the record to include two additional issues which were not properly raised in the chancery court. It has long been the rule that an issue not raised or litigated in the trial court is waived. Lawrence v. Stanford, 655 S.W.2d 927, 929 (Tenn. 1983); T.R.A.P. 36(a). A party may not raise an issue for the first time on appeal. Id; State v. Turner, 919 S.W.2d 346, 356-57 (Tenn. Cr. App. 1995); Jones v. State, 915 S.W.2d 1, 2-3 (Tenn. Crim. App.

13

1995).  Thus, the chancery court did not err in denying Flowers' request to supplement the record to include additional issues on appeal.

Finally, Flowers contends that the chancery court erred in dismissing his petition for writ of certiorari holding that the Board did not act arbitrarily, capriciously or in excess of its jurisdiction in making its decision to delay Flowers' parole eligibility hearing.  Because the Tennessee legislature has given the Board the discretion in determining when and under what conditions prisoners serving felony sentences of more that two years may be released on parole and because the Board did not act illegally, fraudulently, arbitrarily or in excess of its jurisdiction when it decided to postpone Flowers' parole hearing until he received an updated psychological evaluation, the chancery court did not err in dismissing Flowers' petition for writ of certiorari.

The decision of the chancery court is hereby affirmed.  Costs on appeal are taxed to Flowers for which execution may issue if necessary.

_____

HIGHERS, J.

CONCUR:

_____

FARMER, J.

14

LILLARD, J.