STATE of Tennessee, Appellant,

v.

**Paul Douglas TESTER, Appellee.**

Supreme Court of Tennessee,
at Knoxville.

June 20, 1994.

---

Charles W. Burson, Atty. Gen. and Reporter, and Kimbra R. Spann, Asst. Atty. Gen., Nashville, for appellant.

James S. Roach, Johnson City, for appellee.

## OPINION

ANDERSON, Justice.

In this direct appeal, we are asked to determine the constitutionality of a general law[1] with limited application which allows persons convicted of second offense driving under the influence of a drug or intoxicant to serve the mandatory 45–day jail sentence in a work release program. It applies only to three counties—Davidson and Moore, because they have metropolitan governments, and Shelby, because of its population classification. In all other counties in the State, the law requires that second-time DUI offenders serve a minimum mandatory jail sentence of 45 days.

The Washington County trial court found that part of the statute limiting its applicability to three counties unconstitutional under the equal protection guarantees of the United States and Tennessee Constitutions. The trial court, however, elided the unconstitutional portion, held the remainder of the statute constitutional and applied it in this Washington County case, sentencing the defendant to serve his 50–day sentence in a work release program rather than jail. The effect of the trial court's action is to apply the remainder of the statute to all 95 counties.

---

1. Tenn.Code Ann. § 41–2–128(c) (1990 & Supp. 1993).

Because no rational basis exists for limiting the application of the statute to three counties—Shelby, Davidson, and Moore—we hold the entire statute is unconstitutional. The result of this holding is to affirm the trial court judgment finding the *classification* unconstitutional under the equal protection guarantees of the state and federal constitution, but to reverse the trial court's judgment which applied the doctrine of elision and upheld the remaining provisions of the statute as constitutional. We hold the doctrine of elision does not apply because we cannot conclude, clear of doubt, from the face of the statute that the Legislature would have enacted the statute without the provision limiting its applicability. Accordingly, we conclude the entire work release statute, Tenn.Code Ann. § 41–2–128(c), is unconstitutional.

### BACKGROUND

The defendant, Paul Tester, was indicted by the Washington County Grand Jury for second offense DUI. Tester responded by challenging the constitutionality of Tenn. Code Ann. § 41–2–128(c)(9), which limits application of the DUI second offense work release statute to counties with a population of more than 700,000 and counties with a metropolitan form of government, which includes only Shelby, Davidson, and Moore Counties.

The penalty statute applicable generally to persons convicted of second offense DUI provides, in pertinent part:

(a)(1) ... For conviction on the second offense, there shall be imposed a fine ... and the person or persons *shall be confined in the county jail or workhouse for not less than forty-five (45) days nor more than eleven (11) months and twenty-nine (29) days* ....

. . . .

(b)(1) No person charged with violating the provisions of §§ 55–10–401—55–10–404 shall be eligible for suspension of prosecution and dismissal of charges pursuant to the provisions of §§ 40–15–102—40–15–105 and 40–32–101(a)(3)–(c)(3) or for any other pretrial diversion program, nor shall any person convicted under such sections be eligible for suspension of sentence or probation pursuant to § 40–21–101 [repealed] or any other provision of law authorizing suspension of sentence or probation *until such time as such person has fully served day for day at least the minimum sentence provided by law.*

Tenn.Code Ann. § 55–10–403(a)(1) and (b)(1) (1993) (emphasis added). Accordingly, a second offense DUI offender must serve a minimum jail sentence of 45 days, day for day, before probation or suspension may be considered.

In direct conflict with the penalty statute set out above is the challenged statute, which allows work release for qualified DUI second offenders, and provides in part as follows:

(c)(1) Notwithstanding the provisions of this section, § 55–10–403(a)(1) or § 55–50–504(a)(2) to the contrary, the judge may sentence persons convicted of a second violation of § 55–10–401 or § 55–50–504(a)(2), to the work release program established pursuant to this section if, prior to doing so, the following conditions have been met:

. . . .

*(9) The provisions of this subsection only apply to counties having a population of more than seven hundred thousand (700,000) according to the 1980 federal census or any subsequent federal census or to counties having a metropolitan form of government.*

Tenn.Code Ann. § 41–2–128(c)(1) & (9) (1990 & Supp.1993) (emphasis added).

Tester pled guilty to second offense DUI. Under the plea agreement, Tester was to be sentenced to jail for 50 days, subject to the trial judge considering work release at sentencing should the work release statute be held constitutionally applicable in Washington County.

At the sentencing hearing where the constitutionality of the work release statute was an issue, the evidence established that Tester met all the conditions for eligibility to serve his sentence on work release, *except he had not been convicted in either Shelby, Davidson, or Moore County.* Tapes of the legislative discussion before a state Senate committee reflected that the work release program was intended to be a pilot project in Shelby County aimed at alleviating jail overcrowding caused by imposing minimum mandatory jail sentences upon second time DUI offenders. The record also contained two Orders from the U.S. District Court for the Eastern District of Tennessee, dated September 17, 1991 and January 14, 1993, which concluded that imposing mandatory jail terms on second time DUI offenders had resulted in unconstitutional overcrowding of the Washington County jail. County officials were ordered to take steps to alleviate the overcrowding, first to reduce the number of prisoners and finally, to construct a new jail.

After considering the evidence, the trial court found that the provision limiting applicability of the work release statute to only three counties in the State was unconstitutional in that it violated the equal protection clauses of the United States and Tennessee Constitutions. The trial court accepted the plea agreement, but ruled that the defendant could serve his 50-day sentence in a work release program in Washington County. The ruling elided the unconstitutional limiting provision and thus afforded statewide application to the remainder of the work release statute.

### EQUAL PROTECTION

The State, in this appeal, contends that the trial court erred in finding the limiting provision of the statute unconstitutional. Assuming, however, that the limiting provision is unconstitutional, the State's fall-back position is that the trial court erred in applying elision and upholding the remainder of the statute. We begin our analysis by examining the grounds upon which the trial court held the limiting provision of the statute unconstitutional.

Equal protection of the laws is guaranteed by both the United States and Tennessee Constitutions. Section 1 of the Fourteenth Amendment to the United States Constitution provides:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law; *nor deny to any person within its jurisdiction the equal protection of the laws.*

(Emphasis added.)

Two provisions of the Tennessee Constitution, though applicable to different circumstances, encompass the equal protection guarantee. Pursuant to Article I, Section 8:

**No man to be disturbed but by law.—** That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property but by the judgment of his peers or the law of the land.

Article XI, Section 8 provides:

**General laws only to be passed.—**The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie, [immunities] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

While recognizing that "[t]he equal protection provisions of the Tennessee Constitution and the Fourteenth Amendment are historically and linguistically distinct," this Court has stated that Article I, § 8 and Article XI, § 8 of the Tennessee Constitution confer "essentially the same protection" as the equal protection clause of the United States Constitution. *Tennessee Small School Systems v. McWherter,* 851 S.W.2d 139, 152 (Tenn.1993).

Moreover, when determining the merit of equal protection challenges, this Court has followed the analytical framework developed by the United States Supreme Court and has "utilized three standards of scrutiny, depending upon the right asserted." *Id.* at 153; *Doe v. Norris,* 751 S.W.2d 834, 840 (Tenn. 1988) (strict scrutiny); *Mitchell v. Mitchell,* 594 S.W.2d 699, 701 (Tenn.1980) (heightened scrutiny); *See City of Memphis v. International Brotherhood of Elec. Workers Union,* 545 S.W.2d 98, 101 (Tenn.1976) (reduced scrutiny).

■ Equal protection analysis requires strict scrutiny of a legislative classification only when the classification interferes with the exercise of a "fundamental right" (e.g., right to vote, right of privacy), or operates to the peculiar disadvantage of a "suspect class" (e.g., alienage or race). *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 16, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16 (1973); *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (right to vote); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (right to privacy); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right to interstate travel).

The State suggests, and apparently the defendant agrees, that this Court should apply reduced scrutiny and examine the statute here challenged under the rational basis test.

■ Clearly, second-time DUI offenders have never been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian process," and thus be denominated a "suspect class." *San Antonio Independent School Dist. v. Rodriguez, supra,* 411 U.S. at 27, 93 S.Ct. at 1294.

■ Moreover, work release is not a fundamental right. This Court has stated that rights are fundamental when they are either implicitly or explicitly protected by a constitutional provision. *Tennessee Small School Systems v. McWherter,* 851 S.W.2d at 152. Although the right to personal liberty is fundamental, that right is not implicated after a person is convicted of a crime and the only issue is the manner of service of the sentence imposed. *See State ex rel. Stewart v. McWherter,* 857 S.W.2d 875, 877 (Tenn. Crim.App.1992). Furthermore, this Court has previously held that probation is a privilege, not a right. *State v. Correll,* 626 S.W.2d 699 (Tenn.1982). Work release is a form of probation and is, therefore, a privilege and not a right. *State v. Lowe,* 661 S.W.2d 701 (Tenn.Crim.App.1983). Accordingly, we will apply the rational basis test in analyzing the defendant's equal protection challenge.

■ The "rational basis test" was described in *Tennessee Small School Systems v. McWherter, supra,* as follows:

The concept of equal protection espoused by the federal and our state constitutions guarantees that "all persons similarly circumstanced shall be treated alike." Conversely, things which are different in fact or opinion are not required by either constitution to be treated the same. "The *initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States,"* and legislatures are given considerable latitude in determining what groups are different and what groups are the same. Id. In most instances the judicial inquiry into the legislative choice is limited to ***whether the classifications have a reasonable relationship to a legitimate state interest.***

851 S.W.2d at 153 (quoting *Doe v. Norris,* 751 S.W.2d at 840–42) (emphasis added) (internal citations omitted). As this Court has stated on numerous occasions, "[u]nder this standard, if some reasonable basis can be found for the classification, or if any state of facts may reasonably be conceived to justify it, the classification will be upheld." *Tennessee Small School Systems v. McWherter,* 851 S.W.2d at 153 (citing cases); *see also Harrison v. Schrader,* 569 S.W.2d 822, 825 (Tenn.

1978). The individual challenging the statute has the burden of demonstrating that the legislative classification is unreasonable. *Id.* However, there is no bright-line rule by which to distinguish a reasonable from an unreasonable classification. "Reasonableness" varies with the facts in each case. *Id.; see also Harwell v. Leech,* 672 S.W.2d 761, 763 (Tenn.1984). This Court's discussion of the issue in *State v. Nashville, Chattanooga & St. Louis Railway Co.,* offers some guidance:

> [T]he classification must not be mere arbitrary selection. It must have some basis which bears a natural and reasonable relation to the object sought to be accomplished, and there must be some good and valid reason why the particular individual or class upon whom the benefit is conferred, or who are subject to the burden imposed, not given to or imposed upon others should be so preferred or discriminated against. ***There must be reasonable and substantial differences in the situation and circumstances of the persons placed in different classes which disclose the propriety and necessity of the classification.*** If legislation arbitrarily confers upon one class benefits, from which others in a like situation are excluded, it is a grant of a special right, privilege, or immunity, prohibited by the Constitution, and a denial of the equal protection of the laws to those not included.... ***The fundamental rule is that all classification must be based upon substantial distinctions which make one class really different from another; and the characteristics which form the basis of the classification must be germane to the purpose of the law....***

*Id.,* 124 Tenn. 1, 135 S.W. 773, 775–76 (1910) (quoting Lewis, 1 *Sutherland on Statutory Construction* 366 (2d ed.)) (internal quotations omitted) (emphasis added).

■ In this case, the "rational basis" advanced by the State in support of the challenged provision is that the jail facilities in Shelby County and in counties with a metropolitan form of government (Davidson and Moore) are overcrowded to the extent that there is a real and substantial distinction between those counties and the other 92 counties in the State. The State concludes, therefore, that the classification is reasonable. We cannot agree.

In our view, this argument ignores the evidence in this record, which indicates that ***Washington County*** has experienced serious jail overcrowding that was directly caused by the mandatory incarceration of ***second time DUI offenders.*** This overcrowding condition was sufficiently serious to require federal court intervention and orders requiring the County to remedy the unconstitutional overcrowding. In contrast, there is no evidence in the record to support the State's claim that the counties included within the law have, in fact, experienced jail overcrowding as a result of second time DUI offenders to a greater extent than the other 92 counties, nor is there any evidence of the effect of work release on overcrowded jail conditions. Finally, the State's asserted rational basis is further undermined by the fact that Moore County, the second smallest county in the State with a population of 4,721 (1990 Census), is afforded the benefit of the classification, while more populous counties, such as Hamilton and Knox, are excluded.

The State makes an appealing policy argument that the legislative intent was to keep second offenders employed, to help defray the cost in counties, to support families involving minor children, and to allow offenders to meet their financial obligations. These goals, however admirable, apply equally to all second time offenders and provide no rational basis for distinguishing between the three counties to which the act is limited and all the other counties of the State.

■ We are aware that an equal protection challenge must fail "if some reasonable basis can be found for the classification, or if any state of facts may reasonably be conceived to justify" the classification. *Tennessee Small School Systems v. McWherter,* 851 S.W.2d at 153; *see also Harrison v. Schrader,* 569 S.W.2d at 825. In this case, the State

has failed to demonstrate any rational basis for the classification or to advance a hypothetical state of facts to support the classification, nor can we conceive of a reasonable basis for the classification at issue. Accordingly, we affirm the trial court's judgment finding the provision limiting to three counties the applicability of the work release statute, Tenn.Code Ann. § 41–2–128(c)(9), an unconstitutional classification under the equal protection guarantees of both the federal and state constitutions.

## ELISION

Having determined that the limiting provision, Tenn.Code Ann. § 41–2–128(c)(9), is unconstitutional, we must now consider whether the offending portion of the statute can be stricken and the remainder upheld. The result of doing so would give the work release statute general, statewide effect.

The doctrine of elision allows a court, under appropriate circumstances when consistent with the expressed legislative intent, to elide an unconstitutional portion of a statute and find the remaining provisions to be constitutional and effective. *Lowe's Companies, Inc. v. Cardwell,* 813 S.W.2d 428, 430 (Tenn.1991). As we discussed in *Gibson County Special School Dist. v. Palmer,* 691 S.W.2d 544 (Tenn.1985):

> The doctrine of elision is not favored. The rule of elision applies if it is made to appear from the face of the statute that the legislature would have enacted it with the objectionable features omitted, and those portions of the statute which are not objectionable will be held valid and enforceable ... provided, of course, there is left enough of the act for a complete law capable of enforcement and fairly answering the object of its passage. However, a conclusion by the court that the legislature

would have enacted the act in question with the objectionable features omitted ought not to be reached unless such conclusion is made fairly clear of doubt from the face of the statute. Otherwise, its decree may be judicial legislation. The inclusion of a severability clause in the statute has been held by this Court to evidence an intent on the part of the legislature to have the valid parts of the statute enforced if some other portion of the statute has been declared unconstitutional.

*Id.* at 551 (internal citations and quotations omitted).

The work release statute does not contain a severability clause.[2] However, the defendant contends that we should consider as evidence of legislative intent the general severability clause codified at Tenn.Code Ann. § 1–3–110 (1985), which applies to all parts of the Tennessee Code. We are convinced, however, that the general severability clause is not sufficient to justify eliding the constitutionally impermissible classification that excludes 92 of the 95 counties. "Where a clause is so interwoven with other portions of an act that we cannot suppose that the legislature would have passed the act with that clause omitted, then if such clause is declared void, it renders the whole act null." *Hart v. City of Johnson City,* 801 S.W.2d 512, 517 (Tenn.1990). We cannot conclude that, clear of doubt from the face of the statute, the Legislature would have passed the act with the limitation omitted.[3] If we accepted the invitation to apply the doctrine of elision, we would be applying the work release statute statewide in order to uphold the statute, and thus indulging in judicial legislation. This we decline to do. Elision is not appropriate in this case.

## CONCLUSION

Because no rational basis exists for limiting the applicability of the work release stat-

---

2. Although a severability clause was included in the Act as originally passed in 1990, it is not now, nor apparently has it ever been, codified. *See* Acts of 1990, ch. 1065, § 2, 1990 Tenn.Pub. Acts 786, Tenn.Code Ann. § 41–2–128(c) (1990 & Supp.1993).

3. Moreover, the Legislative History reveals that an amendment which would have applied the work release program statewide failed to pass the State Senate and was thereafter withdrawn by the House. Tape # 74, House Session 4/25/91.

ute to Shelby, Davidson and Moore counties, the classification contained in Tenn.Code Ann. § 41–2–128(c)(9) is unconstitutional because it violates the equal protection guarantees of both the federal and state constitutions. Moreover, because we cannot conclude clear of doubt from the face of the statute that the Legislature would have enacted the statute with the unconstitutional provisions omitted, the doctrine of elision does not apply. Therefore, the entire work release statute, Tenn.Code Ann. § 41–2–128(c), is unconstitutional. Accordingly, the judgment of the trial court sentencing the defendant to serve his 50–day sentence in a work release program is reversed. The case is remanded for resentencing consistent with this Opinion. Costs of this appeal are taxed equally between the State and the defendant.

REID, C.J., and DROWOTA, O'BRIEN and BIRCH, JJ., concur.