IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 13, 2000

## STATE OF TENNESSEE v. DAVID CALVIN MITCHELL

**Appeal from the Criminal Court for Anderson County**
**No. 96CR0241     James B. Scott, Jr., Judge**

_____

**No. E1999-02761-CCA-R3-CD**
**March 15, 2001**
_____

The defendant, David Calvin Mitchell, appeals the manner of service of his sentence for second offense DUI.  Notwithstanding Anderson County's lack of a work release program for jail inmates, he claims that he is statutorily and constitutionally entitled to work release during the mandatory, 45-day period of jail confinement for his crime.  Because we hold that the defendant was not statutorily entitled to work release consideration and that there was no equal protection violation, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

Nancy Meyer, Assistant Public Defender, for the Appellant, David Calvin Mitchell.

John Knox Walkup, Attorney General & Reporter; Sandy C. Patrick, Assistant Attorney General; James Ramsey, District Attorney General; Jan Hicks, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

In the Anderson County Criminal Court, David Calvin Mitchell pleaded guilty to second offense driving under the influence (DUI), with the matter of sentencing to be determined by the trial court.  The trial court imposed the mandatory minimum 45-day period of confinement and ordered that the balance of the eleven month, 29 day sentence be served on probation.  The defendant requested that the trial court enter an order permitting work release during the period of confinement.  The trial court ruled, however, that because Anderson County had no work release

program for jail inmates, it was without the authority to enter such an order.[1]  In this direct appeal, Mitchell claims that he was statutorily entitled to consideration for work release.  He further claims that the trial court's determination that work release is unavailable to him deprives him of his state and federal constitutional rights to equal protection on the basis that work release is available to individuals in other Tennessee counties convicted of second offense DUI during their service of the 45-day mandatory confinement period prescribed by Tennessee Code Annotated section 55-10-403(a)(1).  Having reviewed the record, the briefs of the parties, and the applicable law, we hold that the defendant was not statutorily entitled to work release eligibility and that he was not deprived of his equal protection rights.  We therefore affirm the judgment of the trial court.

## I

The defendant asks this court to reverse the trial court's determination that work release was not statutorily available to him.  He bases his argument on Code sections 41-2-128, 41-2-129 and 41-2-134.[2]  In pertinent part, section 41-2-128 provides

(a)     Whenever any person has been sentenced to undergo imprisonment in a county workhouse, hereinafter referred to as "workhouse," for the commission of a crime defined as a misdemeanor by the laws of the state of Tennessee, the county board of commissioners, if such there be, otherwise the court of general sessions, upon application made therefor by the warden, superintendent, prison keeper or other administrative head of a workhouse to permit the prisoner to leave the workhouse during necessary and reasonable hours for the purpose of working at the prisoner's employment . . . .  Similarly, the court of general sessions may, upon application of the sheriff, enter a like order for the same purpose for jail prisoners.  The order may be rescinded or modified at any time with or without notice to the prisoner. . . .

(c)(1)  Notwithstanding the provisions of this section, § 55-10-403(a)(1) or § 55-50-504(a)(2) to the contrary, the judge may sentence persons convicted of a second violation of § 55-10-401 or § 55-50-504(a)(2), to the work release program established pursuant to this section, if, prior to doing so, [certain qualifying conditions are met].

Tenn. Code Ann. § 41-2-128(a), (c)(1) (1997).

---

[1] Having reached this threshold determination, the trial court did not address whether the defendant was otherwise an appropriate beneficiary of a work release order.

[2] The defendant does not seek work release pursuant to Code section 40-35-315.  Indeed, that section is applicable to DUI inmates only after service of the mandatory minimum period of incarceration.  Tenn. Code Ann. § 40-35-315 (1997) ("This section shall apply to convictions under § 55-10-401 after the mandatory minimum sentences have been served.").

The defendant also relies on Code section 41-2-129(d).  Section 41-2-129 begins at subsection (a) with provisions for the collection and disbursement of the wages or salary of prisoners who are on work release.  Tenn. Code Ann. § 41-2-129(a) (Supp. 2000).  Subsection (b) calls for prisoners on work release to be financially liable for their board in the workhouse or jail.  *Id.* at (b).  Subsection (c) provides an order of priority for disbursement of a prisoner's earnings.  *Id.* at (c).  Subsection (d) provides, "As an alternative to the procedures described in subsections (a), (b) and (c), the sentencing court may place a prisoner on work release subject to the terms and conditions that the sheriff and the sentencing court may agree upon."  *Id.* at (d).

Finally, the defendant relies on section 41-2-134.  That section provides in pertinent part

(a)     There is hereby created a commission to authorize prisoners to come under a work release program whenever any person has been committed to the workhouse or similar place of confinement and to approve educational programs established pursuant to § 41-2-145.

(b)     The commission as authorized herein is authorized and empowered to permit the defendant to leave the workhouse during approved working hours to work at a place of employment and to earn a living to meet in whole or in part the cost of the prisoner's current financial obligations; provided, that the prisoner shall return to the workhouse each day after work and that the prisoner shall be released only for related rehabilitative purposes as recommended by the correctional/rehabilitative work release coordinator.

Tenn. Code Ann. § 41-2-134(a), (b) (1997).  The remaining subsections provide for the composition of the commission created by subsection (a).  *See id.* at (c), (d).

## A.      Prior Decisions of the Court of Criminal Appeals

Any persuasiveness of the defendant's argument that he is entitled to work release under the foregoing statutory provisions is greatly diminished by two recent decisions of this court.  *See State v. Daniel Patrick Byrd*, No. E1999-01483-CCA-R3-CD (Tenn. Crim. App., Knoxville, Oct. 3, 2000), *pet. for perm. app. filed* (Tenn. Dec. 5, 2000); *State v. Kevin Dewayne Steen*, No. E1999-02669-CCA-R3-CD (Tenn. Crim. App., Knoxville, Sept. 1, 2000).  Both cases originated in the Anderson County Criminal Court and involved second-offense DUI offenders seeking work release.  In *Kevin Dewayne Steen*, a panel of this court held that section 41-2-128 applies only to defendants sentenced (1) to the county workhouse, or (2) by the general sessions court to the county jail.  *Kevin Dewayne Steen*, slip op. at 2.  Thus, a DUI offender sentenced to jail by the criminal court could not avail himself of the section's work release provisions.  *Id.*  The panel went on to hold that section 41-2-129 did not create a separate work release program apart from that created by section 41-2-128.  *Id.*, slip op. at 3.  Moreover, the panel held that the work release program created under section 41-2-134 did not apply to DUI offenders during the service of their mandatory minimum period of confinement.  *Id.*  The result was the same in *State v. Daniel Patrick Byrd*, which was also

-3-

an Anderson County DUI case. *Daniel Patrick Byrd*, slip op. at 4. The logic of these cases defeats the defendant's claim of statutory entitlement to work release eligibility.

## B.    Alternative Interpretation

We can conceive, however, of an alternative interpretation of these sections. Ultimately, however, that alternative interpretation yields no more a favorable result for the defendant than that which was obtained by the defendants in *Kevin Dewayne Steen* or *Daniel Patrick Byrd.*

Title 41, Chapter 2 is entitled "County Workhouses." *See generally* Tenn. Code Ann. § 41-2-101 to -150 (1997 and Supp. 2000) ("County Workhouses"). The provisions of this title authorize the counties to establish, construct and maintain workhouses "as the [county] legislative bodies may, in their discretion and wisdom, deem advisable for the best interest of the county." Tenn. Code Ann. § 41-2-101 (1997). Alternatively,

> Any county not having provided a separate workhouse may, through its county legislative body, declare its jail to be a workhouse, if such jail be, in the opinion of its members of the county legislative body, of sufficient capacity and suitable for the purpose. From and after such declaration the jail shall be known as, and shall be, the county workhouse, and such county shall have thereafter the benefit of all laws in the state applying to workhouses.

Tenn. Code Ann. § 41-2-102 (1997). Thereafter, the provisions of Title 41, Chapter 2 establish a board of workhouse commissioners, prescribe the type of labor to which workhouse prisoners may be put, mandate the workhouse superintendent's duty of care to prisoners, establish general operating procedures for the workhouse, and the like. *See generally* Tenn. Code Ann. § 41-2-103 to -150 (1997 and Supp. 2000). Among these provisions are sections 41-2-127, allowing for release of workhouse prisoners for "occupational, scholastic or medical purposes," section 41-2-128, governing eligibility of prisoners for work release, section 41-2-129, prescribing collection and disbursement of wages or salary of work release prisoners, and section 41-2-134, creating a commission to authorize prisoners for the work release program. *See generally* Tenn. Code Ann. §§ 41-2-127 to -129, -134 (1997 and Supp. 2000). Thus, one may forcefully argue that Title 41, Chapter 2 applies to county workhouses, to the exclusion of county jails not designated as workhouses under section 41-2-102.[3] It follows, then, that sections -128, -129 and -134 govern but one program for work

---

[3] The *Kevin Dewayne Steen* and *Daniel Patrick Byrd* decisions do not directly address whether sections 41-2-128, -129 and -134 apply only to inmates of the workhouse or jail designated as workhouse, to the exclusion of jail inmates in a facility not designated as a workhouse under section 41-2-102. However, it is arguable that these cases contemplated that the Code sections were applicable to facilities not designated as a workhouse because these cases hold that the respective defendants were ineligible for work release, *inter alia*, because section 41-2-128 does not apply to jail prisoners so sentenced by the general sessions court. *See Kevin Dewayne Steen*, slip op. at 2; *see also Daniel Patrick Byrd*, slip op. at 4. Had the prior panels of this court concluded that Title 41, Chapter 2 was wholly inapplicable to

(continued...)

-4-

release from such facilities. *Compare* Tenn. Code Ann. §§ 41-2-101 to -150 (1997 and Supp. 2000) ("County Workhouses") *with* Tenn. Code Ann. §§ 41-1-101 to -140 (1997 and Supp. 2000) ("Jails and Jailers").

Under this interpretation, the defendant is not eligible for work release because Anderson County has neither a workhouse nor is its jail designated as a workhouse. *See* Tenn. Code Ann. § 41-2-101, -102 (1997).

We need not decide whether the correct resolution is that of *Kevin Dewayne Steen* and *Daniel Patrick Byrd*, as opposed to the alternate interpretation of Title 41, Chapter 2 posed above. Under either approach, the result is the same – the defendant has not established statutory eligibility for work release in Anderson County during the service of the mandatory minimum period of confinement for his second-offense DUI conviction.

## II

We now turn to the defendant's constitutional claim that he has been denied equal protection by the unavailability of work release in Anderson County during the service of a mandatory confinement period for second offense DUI.

Generally, the equal protection clauses of the state and federal constitutions provide that similarly situated individuals will be treated alike by governmental actors.[4]  *See* U.S. Const. amend. XIV, Tenn. Const. art. I, § 8, art. XI, § 8. "Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." *Baxstrom v. Herold*, 383 U.S. 107, 112, 86 S. Ct. 760, 763 (1966). "A statute cannot be declared unconstitutional on the basis that its application would create an unreasonable classification unless it is shown such application would subject some groups within a class to the application of the act and exclude others within the class from its application." *State v. Teasley*, 653 S.W.2d 761, 762 (Tenn. Crim. App. 1983).

### A. Prior Decision of the Court of Criminal Appeals

Another panel of this court recently held that the work release provisions of Title 41, Chapter 2 did not violate the equal protection rights of an Anderson County second offense DUI defendant. *See State v. Christopher Lindsay*, No. E1999-00036-CCA-R3-CD (Tenn. Crim. App., Knoxville, Nov. 3, 2000), *pet. for perm. app. filed* (Tenn. Dec. 29, 2000).  That panel held that the

_____

[3](...continued)
inmates of a jail not designated as a workhouse under section 41-2-102, it would have been unnecessary to specifically address the reach of 41-2-128 and make the general sessions court/criminal court distinction as regards work release eligibility.

[4]The Tennessee Supreme Court has held that the equal protection guarantees of the state and federal constitutions are essentially coterminous. *See State v. Tester*, 879 S.W.2d 823, 827 (Tenn. 1994).

work release provisions under scrutiny did not violate equal protection because they "are equally applicable to all counties." *Id.*, slip. op at 2. In reaching that conclusion, the court noted that the current versions of Code sections 41-2-128 and 41-2-134 were enacted by the Legislature without language which restricts work release programs to certain counties.[5] *Id.*, slip op. at 2-3. Additionally, the court said, "[T]he Tennessee Legislature has clearly stated that '[a]ll counties in the state . . . may institute a work release program . . . .' Tenn. Code Ann. § 41-2-133." *Id.*, slip op. at 3. The court said that use of the word "may" indicated legislative intent to authorize but not compel the counties to create work release programs. *Id.* Thereby, the legislature "specifically declined" to create a classification. *Id.* Accordingly, the defendant's equal rights were not infringed. *Id.*

## B.      Alternative Interpretation

We respectfully question the *Christopher Lindsay* panel's reading of section 41-2-133 insofar as it concludes that all Tennessee counties are included in the statute's reach. That panel relied upon the following language from section 41-2-133, as quoted in that opinion, "[a]ll counties in the state . . . may institute a work release program . . . ." When one reads subsections (a) and (b) of Code section 41-2-133 in their entirety, however, a different picture is presented. Those subsections provide

(a)      All counties in the state, *except as provided in subsection (b)*, may institute a work release program in accordance with the provisions of this chapter.

(b)      *The provisions of this section shall not apply to any county having a population of:*

| not less than | nor more than |
|---|---|
| 14,400 | 14,500 |
| 19,500 | 19,600 |
| 20,200 | 20,300 |
| 28,000 | 28,100 |
| 30,400 | 30,500 |

according to the 1970 federal census or any subsequent federal census.

Tenn. Code Ann. § 41-2-133(a), (b) (1997) (emphasis added). Thus, by excluding certain counties, section 41-2-133 does, indeed, appear to contain a classification system whereby some counties are permitted to institute work release programs and others are not. As a result, some individuals are afforded the privilege of work release, while others are excluded simply on the basis that their crime was committed in a county falling into one of the population categories listed in section 41-2-133(b).

---

[5]The current provisions were enacted following the supreme court's ruling that the prior version of 41-2-128, which applied to only three Tennessee counties, was unconstitutional because there was no rational basis advanced for exclusion of the remaining 92 counties. *See generally State v. Tester*, 879 S.W.2d 823 (Tenn. 1994).

That said, it is not necessary for us to determine whether this classification scheme of 41-2-133(b) passes constitutional muster. The population of Anderson County from the 1970, 1980 and 1990 censuses does not fall within any of the population exclusions of section 41-2-133(b). *See* Population of United States - Tennessee and Tennessee Counties by Decennial Census - 1790 to 1990 (on file in Tennessee State Library and Archives); Riley Darnell, Tennessee Blue Book 1999-2000 607 (Millennium ed. 1999). Thus, the defendant presently before the court has not been excluded from work release *because of* any classification made by section 41-2-133. *See Estrin v. Moss*, 221 Tenn. 657, 673, 430 S.W.2d 345, 352 (Tenn. 1968) (a court should decline to address the constitutionality of a statutory provision unless doing so is essential to resolution of the case and the present rights of the litigants).

We must then consider whether the statute creates any further classification which actually affects Anderson County, and thereby the defendant. With respect to the section 41-2-133 class *of which the defendant is a member*, that is, individuals convicted of crimes in counties that do not fall within the population categories of subsection (b), the statute itself does not operate to treat the defendant differently than any other member of the class. The statute confers authority for creation of a work release program in each of these counties, including Anderson County. It is permissive in nature, rather than mandatory. The permissive nature of the statute is the antithesis of a classification; it indicates legislative disinclination to create a classification affecting Anderson County. *Accord Christopher Lindsay*, slip op. at 3.

Finally, in rejecting the defendant's constitutional claim, we are compelled to note that a defendant has no constitutional interest in serving his sentence in a particular type of facility. *France v. Bradley*, 922 S.W.2d 118 (Tenn. Ct. App. 1995) (defendant had no equal protection right to serve his sentence in local jail, where he could earn sentence credits through its work programs, rather than in Department of Correction, where he could not). Moreover, work release is a from of probation and therefore is a privilege and not a right. *See Tester*, 879 S.W.2d at 828.

We conclude that the defendant was not statutorily or constitutionally entitled to be considered for work release. Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-7-