IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 15, 2003 Session

## STATE OF TENNESSEE v. TERRANCE W. PRICE

**Direct Appeal from the Criminal Court for Davidson County
Nos. 2002-A-56 and 2001-B-1022     Cheryl Blackburn, Judge**

---

**No. M2002-00991-CCA-R3-CD - Filed May 9, 2003**

---

Pursuant to a negotiated plea agreement, Defendant, Terrance W. Price, pled guilty to fifteen counts of money laundering, a Class B felony, and one count of conspiracy to commit money laundering, a Class C felony. He pled guilty reserving the right to appeal a certified question of law pursuant to Rule 37(b)(2)(i) of the Tennessee Rules of Criminal Procedure. The certified question of law on appeal is whether Tennessee Code Annotated sections 39-14-901, - 903, Money Laundering Act of 1996, violates Article XI, Section 8 or Article I, Section 8 of the Tennessee Constitution by exempting from its application violation of gambling laws, found in Tenn. Code Ann. § 39-17-501 *et seq*. After a careful review, we conclude that the statutes do not violate the Tennessee Constitution, and therefore affirm the judgments of the trial court.

**Tenn R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Dale M. Quillen and Michael J. Flanagan, Nashville, Tennessee, for the appellant, Terrance W. Price.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; John Zimmerman, Assistant District Attorney General; and Tammy Meade, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Defendant pled guilty to various criminal acts in violation of Tennessee Code Annotated section 39-14-903(b)(1), which prohibits "knowingly us[ing] proceeds derived directly or indirectly from a *specified unlawful activity* with the intent to promote, in whole or in part, the carrying on of a specified unlawful activity." Tenn. Code Ann. § 39-14-903(b)(1) (1997) (emphasis added).

"Specified unlawful activity" is defined as follows:

(5)(A) "Specified unlawful activity" means any act, including any preparatory or completed offense, committed for financial gain that is punishable as a felony under the laws of this state, or if the act occurred outside this state, would be punishable by confinement for more than one (1) year under the laws of the state in which it occurred; and

(B) "Specified unlawful activity" does not mean an act, including any preparatory or completed offense, committed for financial gain that is punishable under *chapter 17, part 5 of this title*, or similar provisions of law in another state; and
. . . .

Tenn. Code Ann. § 39-14-902(5)(A) and (B) (1997) (emphasis added) (Chapter 17, part 5 of Title 39 of Tennessee Code Annotated pertains to illegal gambling.).

The crux of Defendant's argument is that the legislature's exclusion of criminal acts in violation of the gambling statutes from those criminal activities which can lead to punishment for prohibited acts of money laundering violates the equal protection of law provisions of Article XI, § 8 and Article I, § 8 of the Tennessee Constitution. The "specified unlawful activity" which underlies Defendant's convictions for money laundering is the promotion of prostitution, a Class E felony, in violation of Tennessee Code Annotated section 39-13-515 (1997).

Article XI, § 8 of the Tennessee Constitution provides in pertinent part as follows:

**General laws only to be passed.** — The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie, [immunities] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

Article I, § 8 of the Tennessee Constitution provides as follows:

**No man to be disturbed but by law.** — That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

Defendant argues that there is no rational basis for excluding the laws prohibiting gambling from the crimes which can trigger application of the statutes prohibiting and punishing acts of money laundering. Thus, argues Defendant, the statutes which prohibit money laundering are unconstitutional, and his convictions for money laundering and conspiracy to commit money

laundering must be reversed and dismissed. Our review is therefore limited to the question of whether the legislature ran afoul of the Tennessee Constitution when it excluded acts in violation of gambling laws from the definition of a "specified unlawful activity" as that term is used in the Money Laundering Act.

Our supreme court has noted that these two provisions of the Tennessee Constitution, Article XI, § 8 and Article I, § 8, provide for the equal protection of laws. *State v. Tester*, 879 S.W.2d 823, 827 (Tenn. 1994). These provisions of the Tennessee Constitution provide the same protection as the equal protection clause in the United States Constitution. *Id*. Unless the legislative classification disadvantages a "suspect class" or interferes with the exercise of a "fundamental right," requiring strict scrutiny analysis, the challenged statute is examined under the "rational basis test." *Id*. at 828. As noted above, Defendant concedes that the statutes involved in this appeal must be analyzed under the "rational basis" test.

In the recent case of *State v. Robinson*, 29 S.W.3d 476, 480 (Tenn. 2000), the supreme court relied upon and quoted *Tennessee Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 153 (Tenn. 1993), as follows:

> Equal protection constitutional provisions guarantee that "'all persons similarly circumstanced shall be treated alike.'" *Tennessee Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 153 (Tenn. 1993) (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S. Ct. 560, 562, 64 L. Ed. 989 (1920)). This Court has said:
>
> The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States, and legislatures are given considerable latitude in determining what groups are different and what groups are the same. . . . In most instances the judicial inquiry into the legislative choice is limited to whether the classifications have a reasonable relationship to a legitimate state interest.

In *Tennessee Small School Sys. v. McWherter*, 851 S.W.2d 139, 153-54 (Tenn. 1993), the supreme court quoted from *Harrison v. Schrader*, 569 S.W.2d 822 (Tenn. 1978), as follows:

> In *Harrison v. Schrader*, 569 S.W.2d 822, 825-826 (Tenn. 1978), the Court also found that the determinative issue is whether the facts show some reasonable basis for the disparate state action. The Court stated as follows:
>
> > Under this standard, if some reasonable basis can be found for the classification, or if any state of facts may reasonably be conceived to justify it, the classification will be upheld.
>
> > \*      \*      \*      \*      \*      \*

The test to be applied has been set forth in numerous cases. The classification must rest upon a reasonable basis. If it has a reasonable basis, it is not unconstitutional merely because it results in some inequality. Reasonableness depends upon the facts of the case and no general rule can be formulated for its determination.

The burden of showing that a classification is unreasonable and arbitrary is placed upon the individual challenging the statute; *and if any state of facts can reasonably be conceived to justify the classification or if the reasonableness of the class is fairly debatable, the statute must be upheld.*

(Emphasis added).

A transcript of the legislative history of the Money Laundering Act was made an exhibit at the hearing in the trial court. Our review of this exhibit indicates that the gambling laws were exempted from the definition of "specified unlawful activity" because a majority of the members of the Tennessee House of Representatives did not feel that the money laundering statute should be applied to gambling acts which might be considered minor offenses. The clear implication is that the House of Representatives approved the act in order to enable law enforcement to combat money laundering in other offenses considered to be more serious by the legislative body. This supports the constitutionality of the statute by establishing that the reasonableness of the classification is at least "fairly debatable." *See Tennessee Small School Sys. v. McWherter*, *supra* (quoting *Harrison v. Schrader*, *supra*).

In light of the above authority, we conclude that the "money laundering" statutes are not in violation of the Tennessee Constitution.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE