IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Remanded by Supreme Court November 30, 2005

## THOMAS POSTON STUDDARD v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Dyer County**
**No. C02-61     Lee Moore, Judge**

_____

**No. W2005-02707-CCA-RM-PC  - Filed February 6, 2006**

_____

This case is before us after remand by the Tennessee Supreme Court.  The defendant, who was indicted on three counts of rape of a child, a Class A felony, pled guilty to one count of incest, a Class C felony, in exchange for a negotiated eight-year sentence as a Range II, multiple offender.  On direct appeal, this court originally vacated the judgment of conviction on the grounds that incest is not a lesser-included offense of rape, without reaching the merits of the defendant's sentencing issues. Thomas Poston Studdard v. State, No. W2003-01210-CCA-R3-PC, 2004 WL 370259 (Tenn. Crim. App. Feb. 27, 2004), perm. to appeal granted (Tenn. Sept. 7, 2004).  Our supreme court, however, concluded that the trial court had jurisdiction to accept the defendant's guilty plea and remanded the case to this court for consideration of the defendant's sentencing issues. Studdard v. State, __ S.W.3d __, 2005 WL 3192279 (Tenn. 2005).  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Jim W. Horner, District Public Defender, and H. Tod Taylor, Assistant District Public Defender, for the appellant, Thomas Poston Studdard.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

### OPINION ON REMAND

### FACTS

The defendant, Thomas Poston Studdard, was indicted by the Dyer County Grand Jury with three counts of rape of a child, a Class A felony.  Pursuant to his negotiated plea agreement, on August 22, 2002, he pled guilty to one count of incest, a Class C felony, in exchange for an agreed

sentence of eight years as a Range II, multiple offender in the Department of Correction. On December 20, 2002, the defendant filed a *pro se* motion for correction or reduction of sentence, pursuant to Tennessee Rule of Criminal Procedure 35. In his accompanying memorandum of law, the defendant alleged his plea agreement failed to stipulate that his parole was contingent upon his completion of a mandatory sexual offender program and that his trial counsel had misinformed him of the actual time he would be required to serve by telling him he would be eligible for parole in approximately fourteen months. The defendant asserted that the interest of justice required that his sentence be reduced to conform with his expectation at the time he entered into his plea agreement.

Following the appointment of counsel, the defendant filed an amended motion for reduction of sentence on February 26, 2003. In his amended motion, he alleged, *inter alia*, that he did not learn until after his conviction and incarceration that, before he could receive parole, he was required under Tennessee Code Annotated section 40-35-503(c) to obtain certification from a psychiatrist or psychologist that to a reasonable degree of medical certainty he would not commit further sexual assaults if released from confinement. The defendant asked that the trial court declare the certification requirement unconstitutional as a violation of his equal protection rights and, in the interest of justice, reduce his sentence to probation for the remainder of his eight-year term.

At the April 11, 2003, hearing on the defendant's motion, Marla Martin, a seventeen-year hearing officer with the parole board, testified that the certification requirement of Tennessee Code Annotated section 40-35-503(c) was applicable only to individuals who had committed sexual offenses. She said she had seen only two certifications during her years on the parole board. She added, however, that in neither of those two instances did the individuals involved make parole. Martin testified parole was a privilege for which prisoners had to qualify.

Dr. Ann McSpadden, a psychologist, testified she was employed with a private healthcare company that contracted with the Department of Correction and was familiar with the sexual offender certification statute, having personally certified individuals in the past. She testified the standard for certification was "extremely difficult" and virtually impossible to meet without treatment. She said the sexual offender counseling programs conducted through the Department of Correction were only available at certain institutions, with the most critical, initial stage of the program offered only at DeBerry Special Needs Facility. According to Dr. McSpadden's testimony, offenders are placed on the waiting list for the counseling programs while incarcerated at their respective facilities and transferred to the appropriate facility when a space becomes available, with priority given to those individuals with two years or less remaining on their existing sentences. Dr. McSpadden testified public safety was the reason for the certification requirement.[1]

The defendant testified he did not know about the certification requirement at the time he pled guilty and did not learn until after his incarceration that the sexual offender treatment programs

---

[1]The defendant made a motion, pursuant to Tennessee Rule of Appellate Procedure 14, that this court consider as post-judgment facts his being denied parole on March 8, 2004, and his appeal of this determination being denied on August 12, 2004. The court granted the motion and will consider these facts in its determination of this matter.

were not offered at each prison facility, or that priority for the programs was given to individuals with less than two years remaining on their sentences. The defendant said he had been under the impression he would be eligible for parole, with good behavior, after serving only fourteen months of his sentence. He testified his health had declined during his incarceration, as he had been scheduled for gallbladder surgery over a year previously but had not been given the surgery. In addition, he was suffering from Hepatitis C for which he was not receiving any treatment. The defendant also testified that his seventy-five-year-old mother, who cared for his children and was receiving kidney dialysis treatment three times a week, needed his assistance at home.

At the conclusion of the hearing, the trial court denied the defendant's motion, finding there were no grounds to support a reduction in sentence and the certification requirement did not violate the defendant's equal protection or due process rights:

> All right, gentlemen. First motion is filed under Rule 35 seeking a reduction of sentence. The Court does not think under – that under Rule 35 there's any basis for reduction of the sentence. The Court notes that the defendant was charged with three Class A Felonies involving rape of a child. He plead [sic] to one count of incest, a Class C Felony as a Multiple Range II Offender. The issue of parole or whether or not parole's granted is not something that this Court has any authority over or has anything to do with. It's strictly with the Tennessee Department of Corrections [sic]. And it is a discretionary function. The issue that you raise, constitutional issue, the Court feels that the Preston [v. Bradley, No. 96-6545, 1997 WL 594986 (6th Cir. Sept. 25, 1997)] case is on point. The statute or the procedure has been declared constitutional and also it's clear in this case and there are numerous Section 1983 Civil Rights cases that are filed on a regular basis in Federal District Court and some in State Court that the issue of parole or whether parole is granted or not granted does not create a liberty interest that triggers the due process clause.
>
> So, your Motion will be denied.

## ANALYSIS

The defendant contends the trial court erred in denying his motion to reduce his sentence and argues that the certification requirement of Tennessee Code Annotated section 40-35-503(c) violates his equal protection rights because it applies only to sexual offenders. The State argues the trial court properly denied the defendant's motion after concluding that the certification statute comports with the Equal Protection Clause of the Fourteenth Amendment. We agree with the State.

A trial court is authorized to reduce a sentence under Tennessee Rule of Criminal Procedure 35(b) upon a finding that the sentence should be reduced "in the interest of justice." State v. Hodges, 815 S.W.2d 151, 154 (Tenn. 1991). However, when the sentence resulted from a plea agreement, as in this case, the scope of Rule 35 (b) is limited to those situations in which "unforeseen, post-

sentencing developments would permit modification of a sentence in the interest of justice." State v. McDonald, 893 S.W.2d 945, 947 (Tenn. Crim. App. 1994) (footnote omitted). Appellate review of a trial court's ruling on a Rule 35(b) motion is under an abuse of discretion standard. State v. Irick, 861 S.W.2d 375, 376 (Tenn. Crim. App. 1993).

The defendant argues that because the Fourteenth Amendment to the United States Constitution provides that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States," and Tennessee Code Annotated section 40-35-503(b) defines parole as a "privilege," the State of Tennessee has created a constitutionally protected interest in parole. Under his analysis, parole is therefore a fundamental right, making the certification requirement of Tennessee Code Annotated section 40-35-503(c) subject to strict judicial scrutiny, with the burden on the State to show a compelling governmental interest and a means narrowly tailored to meet that interest. The defendant acknowledges the State has a compelling interest in public safety but argues that the certification requirement, which is limited to sexual offenders, is not sufficiently narrowly tailored to satisfy strict scrutiny. The defendant further argues that even if strict scrutiny does not apply, the State cannot show a rational basis for treating sexual offenders differently from inmates convicted of other types of felonies for which public safety would be an issue.

Contrary to the defendant's argument, parole has never been a fundamental right in Tennessee. See State v. Tester, 879 S.W.2d 823, 828 (Tenn. 1994). Our supreme court has observed that federal law defines fundamental rights as "those liberties that are deeply rooted in this Nation's history and tradition," rights that are "implicit in the concept of ordered liberty," and rights that are "explicitly or implicitly guaranteed by the Constitution." Planned Parenthood of Middle Tennessee v. Sundquist, 38 S.W.3d 1, 11-12 (Tenn. 2000) (citations and internal quotations omitted). In Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7, 99 S. Ct. 2100, 2104, 60 L. Ed. 2d 668 (1979), the United States Supreme Court stated that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." While we agree with the defendant that the Greenholtz Court recognized that a state could, through its statutory scheme, create a liberty interest in parole protected by due process guarantees, we disagree that Tennessee has done so. The statute upon which the defendant relies, Tennessee Code Annotated section 40-35-503(b), specifically states that parole is a privilege and not a right. The statute reads in pertinent part:

> (b) Release on parole is a privilege and not a right, and no inmate convicted shall be granted parole if the board finds that:
>
> (1) There is a substantial risk that the defendant will not conform to the conditions of the release program;
> (2) The release from custody at the time would depreciate the seriousness of the crime of which the defendant stands convicted or promote disrespect for the law;

(3) The release from custody at the time would have a substantially adverse effect on institutional discipline; or

(4) The defendant's continued correctional treatment, medical care or vocational or other training in the institution will substantially enhance the defendant's capacity to lead a law-abiding life when given release status at a later time.

(c) No person convicted of a sex crime shall be released on parole unless a psychiatrist or licensed psychologist designated as a health service provider has examined and evaluated such inmate and certified that, to a reasonable medical certainty, the inmate does not pose the likelihood of committing sexual assaults upon release from confinement. The examination and evaluation shall be provided by psychiatrists or licensed psychologists designated as health service providers whose services are contracted or funded by the department of correction or the board of paroles. The board shall consider any such other evaluation by a psychiatrist or licensed psychologist designated as a health service provider which may be provided by the defendant.

Tenn. Code Ann. § 40-35-503(b)-(c) (2003).

Both the United States and Tennessee Constitutions guarantee citizens the equal protection of the laws. Brown v. Campbell County Bd. of Educ., 915 S.W.2d 407, 412 (Tenn. 1995), cert. denied, 517 U.S. 1222, 116 S. Ct. 1852, 134 L. Ed. 2d 952 (1996); Tester, 879 S.W.2d at 828. "Equal protection requires that all persons in similar circumstances be treated alike[.]" State v. Smoky Mountain Secrets, Inc., 937 S.W.2d 905, 912 (Tenn. 1996). Strict scrutiny is required in analyzing an equal protection challenge only when the classification at issue interferes with a fundamental right or operates to the particular disadvantage of a suspect class. Tester, 879 S.W.2d at 829. Since neither situation exists here, we analyze the sexual offender certification requirement under the reduced scrutiny standard, which employs the rational basis test.

The strict scrutiny test "imposes upon those challenging the constitutionality of a statute the greatest burden of proof." Brown, 915 S.W.2d at 413 (citing Tennessee Small School Sys. v. McWherter, 851 S.W.2d 139, 153 (Tenn. 1993)). The Brown court defined the test by quoting from Tester as follows:

"The concept of equal protection espoused by the federal and our state constitutions guarantees that all persons similarly circumstanced shall be treated alike. Conversely, things which are different in fact or opinion are not required by either constitution to be treated the same. The initial discretion to determine what is different and what is the same resides in the legislatures of the States, and legislatures are given considerable latitude in determining what groups are different and what groups are the same. In most instances the judicial inquiry into the legislative choice

-5-

is limited to *whether the classifications have a reasonable relationship to a legitimate state interest*."

Id. at 413-14 (quoting Tester, 879 S.W.2d at 828) (internal quotations omitted). The Brown court went on to describe the burden that must be overcome in order to show that a statute is unconstitutional under the reduced scrutiny test:

> Thus, if a reasonable basis exists for the difference in treatment under the statute, or if any set of facts can reasonably be conceived to justify it, the statute is constitutional. Equal protection does not require absolute equality. Nor does it mandate that everyone shall receive the same advantages. Unless the individual challenging the statutes can establish that the differences are unreasonable, the statute must be upheld.

Id. at 414 (citations omitted).

Our Legislature, which is given "'considerable latitude in determining what groups are different and what groups are the same,'" id. at 413-14 (quoting Tester, 879 S.W.2d at 828), has obviously determined that public safety concerns necessitate that sexual offenders be treated differently from other offenders by requiring that, in order to be granted parole, they obtain certification from a mental health care professional that to a reasonable degree of medical certainty they do not present the likelihood of committing further sexual assaults if released from confinement. As the defendant concedes, the State has a legitimate interest in protecting the public from further sexual assaults from sexual offenders. We note that in the unpublished federal case cited by the trial court in its decision, the Sixth Circuit Court of Appeals concluded that Tennessee's sexual offender statute does not deny equal protection rights to sexual offenders: "Further, Tennessee's requirement that sex offenders participate in a treatment program before being eligible for parole passes constitutional muster under the Equal Protection Clause, because the policy and law are rationally related to the state's goal of promoting public safety." Preston, 1997 WL 594986, at *1. We agree it was reasonable for the Legislature to treat sexual offenders differently based on the nature of their offenses and its concerns for public safety, and therefore conclude that the defendant's equal protection claim is without merit.

We further conclude that the trial court did not abuse its discretion in denying the defendant's motion to reduce his sentence. The fact that the defendant did not learn of the sexual offender requirements for parole until after sentencing or that his or his mother's health has deteriorated since the time of his guilty plea, do not constitute the type of "unforeseen, post-sentencing developments" that " would permit modification of a sentence in the interest of justice." McDonald, 893 S.W.2d at 947.

## CONCLUSION

Having reviewed the record and applicable law, we find no abuse of discretion in the trial court's denial of the defendant's motion to reduce his sentence. Accordingly, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE