IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 9, 2001

## CALVIN TANKESLY v. SGT. PUGH, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 00-135-III      Ellen Hobbs Lyle, Chancellor**

---

**No. M2000-01520-COA-R3-CV - Filed June 27, 2002**

---

Petitioner, a state inmate, filed the underlying *pro se* petition for writ of certiorari to challenge the result of a disciplinary proceeding against him. The trial court dismissed the suit for failure to state a claim. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., joined. WILLIAM C. KOCH, JR., J., filed a dissenting opinion

Calvin Tankesly, Pikeville, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Mark A. Hudson, Senior Counsel, Nashville, Tennessee, for the Appellees, Sgt. Pugh, Disciplinary Board Chairman, and James Bowlen, Warden, Southeastern Tennessee State Regional Correctional Facility.

### OPINION

Mr. Tankesly, an inmate in the custody of the Department of Correction, appeals from the trial court's denial of his petition for common-law writ of certiorari in which he sought judicial review of prison disciplinary proceedings.

In his petition, Mr. Tankesly alleged he and another inmate were charged with the disciplinary infraction of fighting. He alleged that during the disciplinary hearing he was advised that if he did not plead guilty to fighting he would be charged with assault and be reclassified. He pled guilty to fighting and received sanctions of ten days in punitive segregation and an order to pay half the medical costs resulting from the incident.

Mr. Tankesly alleged these actions deprived him of due process because he was placed under duress by threat of a more serious charge to induce his guilty plea. He also complained that he should have been given credit for the three days he served in segregation prior to the hearing and that the denial of his post-hearing request for that adjustment was inconsistent with sanctions given to other prisoners disciplined for similar offenses. This, he asserted, denied him equal protection of the law.

The trial court dismissed Mr. Tankesly's petition on the bases that: (1) it failed to state a claim upon which relief could be granted; and (2) that Sergeant Pugh and Warden Bowlen were not proper parties. The court ruled that "the regimen to which petitioner was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected." Relying on *Sandin v. Conner*, 512 U.S. 472, 115 S. Ct. 2293 (1995), the trial court determined Mr. Tankesly had no protected liberty interest and, therefore, his due process claims must be dismissed. In addition, the court held that Mr. Tankesly had sued improper parties, the warden and the disciplinary board chairman, and according to Tenn. Code Ann. § 27-9-104 "the only proper respondent is the Tennessee Department of Correction."

## I. Standard of Review

A Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of the petitioner's proof. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). The basis for the motion is that the allegations contained in the complaint, considered alone and taken as true, are insufficient to constitute a cause of action. *Id.* In resolving the issues in this appeal, we are required to construe the complaint liberally in the plaintiff's favor and take the allegations of the complaint as true. *Bell v. Icard, Merrill, Cullins, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999). Our standard of review on appeal from a trial court's ruling on a motion to dismiss is *de novo*, with no presumption of correctness as to the trial court's legal conclusions. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997).

The proper method for judicial review of a prison disciplinary board decision is by petition for common-law writ of certiorari. *Rhoden v. State Dep't. of Corr.*, 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998) (citing *Bishop v. Conley*, 894 S.W.2d 294 (Tenn. Crim. App. 1994)). Under such a petition, a court's review of administrative agency decisions is very limited.

A common-law writ of certiorari is an extraordinary judicial remedy. *Robinson v. Traughber*, 13 S.W.3d 361, 364 (Tenn. Ct. App. 1999); *Fite v. State Bd. of Paroles*, 925 S.W.2d 543, 544 (Tenn. Ct. App. 1996). It is not available as a matter of right, *Boyce v. Williams*, 215 Tenn. 704, 713-14, 389 S.W.2d 272, 277 (1965); *Yokley v. State*, 632 S.W.2d 123, 127 (Tenn. Ct. App. 1981), but rather is addressed to the trial court's discretion. *Blackmon v. Tennessee Bd. of Paroles*, 29 S.W.3d 875, 878 (Tenn. Ct. App. 1999). Accordingly, decisions to grant or deny a common-law writ of certiorari are reviewed using the familiar "abuse of discretion" standard. *Robinson*, 13 S.W.3d at 364. Under this standard, a reviewing court should not reverse a trial court's discretionary decision unless it is

based on a misapplication of controlling legal principles or a clearly erroneous assessment of the evidence, *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999), or unless it affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the complaining party. *Marcus v. Marcus*, 993 S.W.2d 596, 601 (Tenn. 1999); *Douglas v. Estate of Robertson*, 876 S.W.2d 95, 97 (Tenn. 1994).

The scope of review under a common-law writ of certiorari is extremely limited. Courts may not: (1) inquire into the intrinsic correctness of the lower tribunal's decision; *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997); *Powell v. Parole Eligibility Rev. Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994); (2) reweigh the evidence, *Watts v. Civil Serv. Bd. for Columbia*, 606 S.W.2d 274, 277 (Tenn. 1980); *Hoover, Inc. v. Metropolitan Bd. of Zoning App.*, 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996); or (3) substitute their judgment for that of the lower tribunal. *421 Corp. v. Metropolitan Gov't*, 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000). Rather, the writ permits the courts to examine the lower tribunal's decision to determine whether the tribunal exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily. *Turner v. Tennessee Bd. of Paroles*, 993 S.W.2d 78, 80 (Tenn. Ct. App. 1999); *Daniels v. Traughber*, 984 S.W.2d 918, 924 (Tenn. Ct. App. 1998).

The writ itself is an order issued by a superior court to compel an inferior tribunal to send up its record for review. In order to warrant issuance of the writ, the petition must sufficiently allege that the inferior tribunal acted outside its jurisdiction, illegally, fraudulently, or arbitrarily. In the case before us, the petition for writ of certiorari was met with a motion to dismiss, pursuant to Tenn. R. Civ. P. 12.02(6), for failure to state a claim upon which relief can be granted. Because the petition merely seeks the filing of the record and judicial review of the proceedings and decision, a motion to dismiss it at this stage can only be granted if the petition fails to make any allegations which justify review of the record under the common-law writ of certiorari standards. In determining the sufficiency of the allegations, conclusory allegations will not entitle a petitioner to the writ, and "if the agency or board has reached its decision in a constitutional or lawful manner, then the decision would not be subject to judicial review." *Powell*, 879 S.W.2d at 873. In addition, because the writ was not issued, the record of the proceedings below was not filed, was not before the trial court, and is not before us.

As stated above, we must take the allegations of Mr. Tankesly's petition as true, and because no record was filed by the Department, we will also take as true information gleaned from those portions of the record Mr. Tankesly attached to his petition. Mr. Tankesly states that he was talking to another inmate in the recreation yard, "when out of no where, this inmate [Mr. Keil] swung at me in an attempt to assault me, a fight subsequently followed." Both inmates were segregated pending a disciplinary hearing.

Mr. Tankesly asserts that the chairman of the disciplinary board entered the segregation unit the next day "for the purpose of conducting a disciplinary hearing," but that the hearing was continued for two days without a request for a continuance from either inmate involved in the fight.

3

Mr. Tankesly also asserts that Mr. Keil pled guilty at his hearing and also "informed Internal Affairs that he was responsible for the initiation of this fight." According to Mr. Tankesly, Mr. Keil received ten days in segregation as sanctions, without credit for the three days he had already served in segregation pending the hearing.[1]

Mr. Tankesly alleges that at his own hearing he was advised by the chair of the board, through his inmate advisor, that "If I did not plead guilty to fighting, I would be charged with Assault and reclassified." He alleges he pled guilty to fighting and received ten days in segregation without credit for the three days he spent in segregation awaiting the hearing. Mr. Tankesly was also ordered to pay half the medical costs that resulted from the fight.

The day after the hearing, Mr. Tankesly and Mr. Keil wrote to the warden asking him to override the disciplinary board chairman's refusal to give them credit off their ten days sanctions for the three days they had spent in segregation prior to the hearing. Mr. Tankesly asserts he never got a response to this letter. Mr. Tankesly also sent a separate letter to the warden requesting that the warden override the board's requirement that he pay half the medical costs on the basis that Mr. Keil had admitted to Internal Affairs "that he started this fight."

Mr. Tankesly has included a copy of the hearing summary from his disciplinary hearing which indicates he was assisted by an inmate advisor at the hearing and that he pled guilty. He signed a statement that he understood that by entering a plea of guilty he was waiving his right to call witnesses and present evidence and that he "must accept whatever punishment is imposed, and will not be allowed to appeal."

The hearing summary also contained the following entry in the line marked statement of the accused: "Inmate Tankesly pled guilty and stated he was involved in a fight with Keil. Tankesly also stated the problem is over." This entry was apparently made by the disciplinary board chairman who signed the summary, Sergeant Pugh. Under Disposition and Statement of Reasons, the guilty plea is cited as support for a finding of guilty of fighting. In addition, the following appears as support: "Tankesly's statement he was involved in fight with Keil." With regard to the reasons supporting the punishment, the statement cites the seriousness of the incident.

Mr. Tankesly also attached to his petition the letter to Warden Bowlen signed by both Mr. Tankesly and Mr. Keil. In pertinent part, it states, "Having waived our right to appeal the guilty pleas, we would like to invoke our right to appeal the "Excessive Punishment" of (10 days) without credit for 3 days already served." The letter asks the warden to review the ten day segregation "when the standard punishment for this infraction has been documented to be 5 days" and to authorize credit for three days served in segregation while awaiting a hearing which was continued without a request from either inmate.

---

[1]According to an affidavit filed by the inmate advisor, Mr. Keil was later assessed with half his medical expenses, which resulted from the fight.

Similarly, Mr. Tankesly attached to his petition the letter he wrote separately to the warden, wherein he asks the warden to review and reverse the assessment of half the medical costs resulting from the fight to him on the basis that Mr. Keil had admitted to an officer in Internal Affairs that he had initiated the fight.[2] In that letter, he also asserts he was told by Roger Adams, his inmate advisor, that if he did not plead guilty, Sgt. Pugh would continue the hearing and pursue an assault charge against him. The letter states, "I entered a guilty plea under the premise that I would get 10 days with credit. Upon entering this plea, Sgt. Pugh ordered me to 10 days seg. without credit in addition to paying ½ of Teddy Keil's medical bill."

Mr. Tankesly also filed with his petition two affidavits, one from himself and one from Roger Adams. Both include the basic allegations that Sgt. Pugh told Mr. Adams to advise Mr. Tankesly that if he did not plead guilty, he would face a charge of assault "with the certainty of being reclassified." In addition, Mr. Tankesly's affidavit alleges that it was the assessment of half the medical costs and the failure to receive credit for the three days he was in segregation that were the violations of his constitutional rights because the fight resulted from Mr. Keil's actions.[3]

Mr. Tankesly also listed in his petition, the names and other information about eight other prisoners who, he alleges, were given credit on their disciplinary board sanctions for time spent in segregation prior to the hearing and five who, he alleges, were not required to pay medical costs for fighting.

The petition requested that the court order the record filed and, after review, determine that he had suffered violations of both his due process rights and his equal protection rights. He asked that the court order that the guilty finding for fighting be stricken from his record, that the requirement that he pay one-half the medical expenses incurred due to injuries from the fight be reversed, and that the $4.00 fee[4] charged to him be returned to his trust fund account.

The trial court determined that Mr. Tankesly had no protected liberty interest entitling him to due process protections because the total of thirteen days in segregation was within the range of confinement to be normally expected in the context of prison life. The trial court did not separately address Mr. Tankesly's equal protection arguments. Neither did the Department at the trial court or on appeal.

---

[2] In this letter, Mr. Tankesly asserts he was provided this information two days prior to his hearing by the officer to whom Mr. Keil spoke.

[3] The affidavit concludes with an assertion that Mr. Keil only served four days on his ten day sentence. In his petition, Mr. Tankesly alleges that Mr. Keil was transferred to the special needs facility for medical review a day or two after the hearing, where he stayed for seven or eight days, and was returned to his original cell assignment while Mr. Tankesly remained in the segregation unit for ten days after the hearing and was then moved to a different housing unit.

[4] The department's policies authorize fees, specifically $4.00 for Class B offenses, to be assessed when an inmate is found guilty or pleads guilty. TDOC Policy # 502.02(VI)(J).

## II. Proper Parties

We first consider the issue of who are proper defendants or respondents in a challenge to a prison disciplinary decision. The issue arose herein because Mr. Tankesly named as defendants Sgt. Pugh, the disciplinary board chairman, and James Bowlen, the warden of Southeastern Tennessee State Regional Correctional Facility. The defendants filed a motion to dismiss and the trial court dismissed Mr. Tankesly's causes of action against individuals Sgt. Pugh and Warden Bowlen based on an interpretation of Tenn. Code Ann. § 27-9-104, which outlines the procedural framework for review under a common-law writ of certiorari. The court determined that the only proper respondent was the Tennessee Department of Correction, not the individual board or commission members. On appeal, Mr. Tankesly argues that the trial court erred in these rulings.

The State argued in its motion to dismiss that under Tenn. Code Ann. § 27-9-104, the only proper defendant in a case of this sort is the Tennessee Department of Correction. We have recently held that "this argument sweeps too broadly and that, depending on the circumstances, parties other than the Department may properly be named as defendants." *Robinson v. Clement*, 65 S.W.3d 632, 635-36 (Tenn. Ct. App. 2001) (citing *Seals v. Bowlen*, M1999-00997-COA-R3-CV, 2001 Tenn. App. LEXIS 547, at *10-14, (Tenn. Ct. App. July 26, 2001) (no Tenn. R. App. P. 11 application filed) (holding that in a prison discipline case both the disciplinary board and the warden were proper parties because each of them had decision-making authority in the disciplinary process)). Throughout his *pro se* pleadings, Mr. Tankesly referred to Sgt. Pugh's actions as those of the chairman of the disciplinary board and Warden Bowlen's actions as those taken in his official capacity as warden. Thus, Mr. Tankesly did not sue Sgt. Pugh and Warden Bowlen in their individual capacities, but in their capacities as officials with a role in imposing punishment upon him as an inmate in custody of the Department of Correction.

We can come to no other conclusion but that Warden Bowlen is a proper party to the suit. One of Mr. Tankesly's claims is that he appealed the denial of three days credit for pre-hearing segregation to the Warden, who denied him relief. *Seals*, 2001 Tenn. App. LEXIS 547, at *10-14. With regard to Sgt. Pugh, we have held that the disciplinary board, whether named as the board or by listing its members and identifying them as the board, is a proper defendant because it is the board or commission whose decision is being challenged. *Id*. We see no significant difference which would amount to a fatal flaw in naming the chair of the board or the hearing officer instead of the board itself or all the board members. The object of a common-law writ of certiorari is to seek review of the board's decision. The petition puts the board or commission on notice to file the record of the decision or otherwise respond. There is no claim herein and nothing in the record to indicate that appropriate officials were unaware of the petition or the claims therein. Pursuant to previous decisions rendered by this court, we disagree with the trial court in that the Tennessee Department of Correction is the only proper party under Tenn. Code Ann. § 27-9-104. *See, e.g., Robinson v. Clement*, 65 S.W.3d at 635-36; *Seals*, 2001 Tenn. App. LEXIS 547, at *10-14.

Accordingly, we reverse the dismissal of Warden Bowlen and Sgt. Pugh in their official capacities, and we proceed to the substance of Mr. Tankesly's claim.[5]

### III. The Guilty Plea

In the case before us, Mr. Tankesly asserts that the chairman of the disciplinary board acted arbitrarily and illegally, depriving him of due process, by extorting him to plead guilty on the charge of fighting after being threatened with harsher punishment.

Any due process analysis must begin with a determination of what process, if any, was due in the circumstances presented. The United States Supreme Court has several times discussed the extent of the due process guarantees applicable to prison disciplinary proceedings and has held that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 2975 (1974) (citing *Morrissey v. Brewer*, 408 U.S. at 411, 480, 92 S. Ct. 2593, 2600 (1972)). In *Wolff*, the Court recognized that the unique requirements of prison life necessarily involve the loss by prisoners of many rights afforded to unincarcerated citizens. The Court also established the minimal constitutional requirements which must be met in prison disciplinary proceedings, where a liberty interest is implicated. Those rights include written prior notice of the charges, an opportunity to present witnesses when not hazardous to institutional safety and goals, an impartial decision maker, and a written statement as to the evidence relied on and the reason for the action taken. *Wolff*, 418 U.S. at 564-66, 94 S. Ct. at 2978-79. We note that Mr. Tankesly has not alleged deprivation of any of these rights and his filings would not support any such allegation.[6] In *Hitson v. Bradley*, No. 01-A-01-9403-CH-00129, 1994 Tenn. App. LEXIS 442, at *7-8 (Tenn. Ct. App. Aug. 12, 1994) (no Tenn. R. App. P. 11 application filed), this court found that *Wolff* did not require that prisoners receive advance notice of the sanctions which will be imposed after a guilty plea in a prison disciplinary proceeding.

The gist of Mr. Tankesly's petition is a request that the court set aside the consequences of his guilty plea. He did not ask the warden to take the same action, instead specifically

---

[5]Although the trial court dismissed the cause against the only two respondents, it proceeded to consider the merits of the motion to dismiss for failure to state a claim. Therefore, we are able to review the trial court's ruling.

[6]The United States Supreme Court later limited the application of *Wolff*, essentially holding that a prisoner's liberty or property interest is not sufficient to trigger due process in a number of situations where disciplinary sanctions are imposed. An inmate is only entitled to the limited due process rights provided in *Wolff* when the sanctions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-85, 115 S. Ct. at 2300-01. The inmate in *Sandin* had been placed in punitive segregation for thirty days due to a disciplinary infraction. The Court held that those who are incarcerated pursuant to a valid conviction are not entitled to constitutional due process in prison disciplinary procedures that result in brief periods of disciplinary segregation, and determined that thirty days was a brief period. *Id*. 515 U.S. at 486, 115 S. Ct. at 2301. This court has applied the *Sandin* holding in a number of cases and has never found that punitive segregation of less than thirty days duration was atypical or significant. The trial court based its decision on *Sandin* because Mr. Tankesly received only thirteen days in segregation. We do not disagree with the trial court's analysis of *Sandin*.

acknowledging he had waived the right to appeal the decision of guilt.[7] That acknowledgment reflects his knowledge of the Department of Correction disciplinary procedures which provide, in pertinent part, that the disciplinary board chairman or hearing officer is to make certain inquiries and reflect the answers to those inquires in the board's findings. Included among those are:

> Whether any inmate entering a plea of guilty has been advised and understands that by so doing, he/she is waiving the right to call witness(es) on his behalf, to cross examine his/her accuser and any hostile witnesses, to review any adverse documentary evidence presented, and to have the case against him/her proved by a preponderance of the evidence presented.

> Whether an inmate entering a plea of guilty was advised that the decision of the board/hearing officer shall not be appealable, including any punishment imposed by the board/hearing officer. The inmate shall sign in the appropriate space on CR-1834 his/her understanding and acceptance of this no appeal provision.

TDOC Policy # 502.01(VI)(E)(2)(a)(5).

In addition, if an inmate pleads guilty, the uniform procedures allow the inmate or his advisor to make a statement to the board or hearing officer prior to the imposition of any punishment. TDOC Policy # 502.01(VI)(E)(2)(b). They also provide that an appeal is available only as to offenses to which the inmate pled not guilty. TDOC Policy # 502.01(VI)(F).

We find no basis for setting aside the guilty plea. Mr. Tankesly does not allege he was unaware of the policies quoted above, the consequences of a guilty plea, or the notices appearing above his signature on the hearing summary he has supplied. Although he now alleges he was coerced into pleading guilty, he does not deny he engaged in a fight with another inmate.[8] Even if Mr. Tankesly was told he could be charged with a more serious disciplinary infraction carrying more significant sanctions, we find no violation of due process. He willingly entered the guilty plea to the lesser offense, but now seems to argue that if he had known he would be required to serve thirteen days in segregation instead of ten days, he would not have made such a plea. Contrary to this position, Mr. Tankesly signed a statement agreeing to "whatever punishment is imposed."

As the United States Supreme Court has stated, prisoners facing prison discipline are not entitled to the full panoply of rights available to a person charged with a criminal offense. We cannot conclude that all the procedural requirements applicable to a guilty plea to a criminal offense, necessarily depriving the accused of his or her liberty, apply to the procedures for prison disciplinary proceedings. The hearing summary provided herein, signed by Mr. Tankesly and by Sgt. Pugh,

---

[7]Consequently, Mr. Tankesly has failed to state a claim against Warden Bowlen with regard to his due process claim.

[8]The Department defines fighting as "a physical altercation between two or more persons without weapons." TDOC Policy # 502.05(V)(A)(25).

provided notice that no particular punishment was part of the prisoner's inducement to plead guilty. Thus, we find no violation of Mr. Tankesly's due process rights with regard to his guilty plea.

## IV. The Punishment

It is clear that Mr. Tankesly's complaint is really about the sanctions imposed against him. We note he does not allege the sanctions were beyond those authorized for the offense of fighting.[9] The essence of his complaint is that the three days he spent in administrative segregation prior to the hearing were not credited toward the ten days punitive segregation he received as punishment for his offense.[10] The administrative segregation, which was authorized pending an investigation and hearing, is not punishment for a disciplinary violation and serves a different purpose.[11]

Mr. Tankesly's argument is that he was denied the constitutional right to equal protection under the Tennessee and United States Constitutions when he was forced to serve, in effect, thirteen (13) days on a ten (10) day sentence and charged with paying medical costs for fighting. He asserts that his equal protection rights were violated when credit for time served in administrative segregation prior to hearing when eight other inmates were given credit for time served,[12] and five of those inmates were not charged with paying medical costs after being convicted of fighting.

The Supreme Court of Tennessee has stated that the Tennessee Constitution's equal protection provisions confer "essentially the same protection" as the equal protection clause of the United States Constitution. *Tennessee Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 152 (Tenn. 1993). Equal protection requires that persons similarly situated be treated the same under the law, or that the state treat persons under like circumstances and conditions the same. *Genesco, Inc. v. Woods*, 578 S.W.2d 639, 641 (Tenn. 1979), *superseded on other grounds by Combustion Eng'g, Inc. v. Jackson*, 705 S.W.2d 655 (Tenn. 1986); *Jaami v. Conley*, 958 S.W.2d 123, 126 (Tenn. Ct. App. 1997). Nevertheless, "[t]he Fourteenth Amendment guarantees equal laws, not equal results." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273, 99 S. Ct. 2282, 2293 (1979), *aff'd*, *Feeney v. Personnel Adm'r of Mass.*, 445 U.S. 901, 100 S. Ct. 1075 (1980).

---

[9]Fighting can be a Class B or Class C offense, depending on the seriousness and within the discretion of the board. TDOC Policy # 502.05(V)(A)(25). The maximum segregation depends, among other things, upon prior offenses, and can range up to twenty (20) days. TDOC Policy # 502.02. Similarly, with regard to the assessment of the medical costs, TDOC Policy # 502.02(VI)(K), allows assessment against an inmate convicted of fighting or assault the actual cost for medical treatment resulting from the incident.

[10]The Department's policies require that a hearing be held within seven (7) days of the charge, absent a justified continuance. Mr. Tankesly alleges the hearing was held within three days of the offense and charge.

[11]The United States Supreme Court has held that administrative segregation which is discretionary with prison officials is not a deprivation of a constitutionally protected liberty interest triggering due process protections. *Hewitt v. Helms*, 459 U.S. 460, 103 S. Ct. 864 (1983).

[12]Mr. Tankesly provided the names of eight other inmates who received credit for time served in his petition for writ of certiorari.

Equal protection challenges are based upon governmental classifications. The classic analysis for such challenges involves the application of differing standards depending upon the effect. That analysis requires strict scrutiny only when the classification interferes with a fundamental right or operates to the peculiar disadvantage of a suspect class. *State v. Tester*, 879 S.W.2d 823, 828 (Tenn. 1994). The standard of reduced scrutiny applies in other situations,[13] requiring only that a rational basis exist for the classification, or that the classification have a reasonable relationship to a legitimate state interest. *Id.*

Unless a suspect classification or denial of a fundamental right to a particular class is involved, equal protection attacks on prison regulations are analyzed to determine whether distinctions between groups have a rational basis, or, more particularly, whether they are reasonably related to penological interests. *Lee v. Young*, 2000 U.S. App. LEXIS 28068, at \*6 (6th Cir. Nov. 6, 2000) (citing *Williams v. Lane*, 851 F.2d 867, 877 (7th Cir. 1988)); *Rawls v. Sundquist*, 929 F. Supp. 284, 289 (M.D. Tenn. 1996), *aff'd*, *Rawls v. Sundquist*, 1997 U.S. App. LEXIS 9606 (6th Cir. Apr. 28, 1997).[14]

Mr. Tankesly does not attack any statute or regulation as an unconstitutional classification. His claim is based upon an allegation of unequal exercise of the discretion granted prison officials by statute and disciplinary policies. The legislature has vested the management and government of the state penitentiaries in the Department of Correction, giving "all the power necessary for the full and efficient exercise of the executive, administrative, and fiscal supervision over correctional institutions . . . ." Tenn. Code Ann. § 4-6-102. This broad grant of legislative discretion necessarily includes the power to establish policies and procedures for handling disciplinary matters. *Mandela v. Campbell*, 978 S.W.2d 531, 534 (Tenn. 1998). Department policies define and classify the disciplinary offenses for which prisoners may be punished, prescribe the types and extent of punishment for each class of offense, and describe the disciplinary procedures to be followed.

Absent an allegation of interference with a fundamental right or discriminatory treatment based on suspect classification, a plaintiff cannot maintain an equal protection claim because he or she was treated differently from others alleged to be similarly situated. *Booher v. U.S. Postal Serv.*, 843 F.2d 943, 944 (6th Cir. 1988). In *Booher,* a discharged probationary employee alleged he was "singled out" for discharge and other probationary employees with worse attendance records were not similarly discharged. *Id.* The Sixth Circuit held that as a probationary employee the plaintiff had no property interest in continued employment. The court further held:

> Booher seeks to make out a violation of equal protection by claiming he was treated differently from other similarly situated employees. Fatal to this allegation is the fact

---

[13]In *Tester*, our Supreme Court confirmed the existence of a middle standard of "heightened" scrutiny, but the case before us does not fall within those situations justifying such scrutiny. *Tester*, 879 S.W.2d at 828.

[14]Even prison regulations which discriminate on the basis of suspect classifications will be upheld if the unequal treatment is "essential to prison security and discipline." *Hudson v. Palmer*, 468 U.S. 517, 523 104 S. Ct. 3194, 3198 (1984).

that there is no claim that Booher was victimized because of some suspect classification, which is an essential element of an equal protection claim. Even assuming there was an unjustified action taken against Booher this single action, without more, cannot form the basis of an equal protection claim.

*Id.* The court reiterated that the equal protection concept does not create a classification of persons who received better treatment. *Id.* In other words, an equal protection claim does not arise simply because of differing treatment.

This reasoning has been applied in the context of a prisoner challenging his reclassification and transfer by prison officials. *Newell v. Brown*, 981 F.2d 880 (6th Cir. 1992), *cert. denied*, 510 U.S. 842, 114 S. Ct. 127 (1993). After first determining that the prisoner did not have a constitutionally protected liberty interest, the court held that "the plaintiff could not make out a violation of his equal protection rights simply by showing that other inmates were treated differently." *Id.* Relying upon *Booher*, the court held that the prisoner would have to show he was reclassified because of some suspect classification. *Id.*; *see also El-Amin v. Tirey*, 817 F. Supp. 694, 700 (W.D. Tenn. 1993), *aff'd*, 1994 U.S. App. LEXIS 22118 (6th Cir. Aug. 16, 1994) (stating that a prisoner's allegation that his charge and conviction of disciplinary offense violated his right to equal protection was without merit because it was based merely on a claim that other inmates were treated differently and did not allege that he was singled out because of his membership in some group or because of some "immutable characteristic"). Similarly, a prisoner alleging selective enforcement of a prison regulation cannot sustain an equal protection claim absent an assertion and a showing of some purposeful discrimination. *Fletcher v. Chartrand*, 869 F.2d 1490 (6th Cir. 1989) (citing *McCleskey v. Kemp*, 481 U.S. 279, 109 S. Ct. 1756 (1987)). One isolated incident of uneven enforcement does not establish purposeful discrimination. *Fletcher*, 869 F.2d at 1490.

Mr. Tankesly has not alleged he was treated more harshly than others because he was a member of a suspect class.[15] The Board acted within its discretion in the sanctions imposed and in its refusal to credit time spent in administrative segregation and stated its reason for the sanction as the seriousness of the incident. Mr. Kiel required medical attention. Obviously, exercise of discretion in punishment in relation to the seriousness of the offense is reasonably related to penological interests. Consequently, Mr. Tankesly has failed to state a claim for denial of equal protection. We also find the Board did not act arbitrarily or capriciously or beyond its jurisdiction.

---

[15]Although the right to personal liberty is fundamental, that right is not implicated after a person is convicted of a crime and the only issue is the manner of service of the sentence imposed. *State ex rel. Stewart v. McWherter*, 857 S.W.2d 875, 877 (Tenn. Crim. App. 1992). Mr. Tankesly forfeited his fundamental right to personal liberty when he committed the underlying offense for which he was convicted and sentenced. Additionally, discretionary administrative segregation does not implicate a constitutionally protected liberty interest. *See Id.* at n.11.

Therefore, we affirm the trial court's dismissal for failure to state a claim upon which relief can be granted. Costs of this appeal are taxed to the petitioner, Mr. Tankesly, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE